PENSACOLA & ATLANTIC RAILROAD COMPANY, AP-
PELLANT, VS. HYER BROTHERS, ET AL., APPEL-
LEES.

### RAILWAY DRAW-BRIDGE—OBSTRUCTIONS UNDER—WHO LIABLE FOR DAMAGE CAUSED BY.

Where a railway company, having lawful authority so to do, crosses a public navigable stream or watercourse with its road, erecting in a proper manner the proper and necessary structures for such crossing, occupying therewith the space and no more than the space permitted to it, and so erects and uses such structures as that they shall not unnecessarily abridge or destroy the usefulness of such stream to the public as a navigable highway, using in a proper manner a movable draw-bridge by which it crosses that part of such stream left open for the public navigation thereof, it is not liable for injuries resulting to vessels navigating such stream from coming in contact with obstructions in the open space or channel of water under such drawbridge when such obstructions are present without fault no such company's part. The open space left to be temporarily spanned from time to time by the railway's draw-bridge is left not only to the free *use*, but to the *control* and *care* of the public, and the railway company is under no more obligation to keep it free of obstructions present without its agency, than it is to care for any other part of the channel of such stream.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion of the court.

*W. A. Blount* for Appellant.

*J. C. Avery* for Appellees.

TAYLOR, J.:

The appellees as owners of the steam tug "E. E. Simpson," in an action in case, in the Circuit Court of Escambia county, recovered judgment against the appellant for the sum of $244.88, and from this judgment the defendant below appeals.

The only error assigned is the ruling of the court below upon the defendant's demurrer to the plaintiffs' declaration, whereby the sufficiency of the declaration to warrant a recovery in law was questioned. The declaration is as follows: "Wm. K. Hyer and Albert Hyer, as partners under the firm name of Hyer Brothers, F. C. Brent, Isaac Rogers and John J. Bowes, as owners of the steam tug named E. E. Simpson, the plaintiffs, by their attorney, John C. Avery, sue the Pensacola and Atlantic Railroad Company, a corporation, the defendant. For that, towit: on the 6th day of March, 1888, to-wit, in the county and State aforesaid (Escambia county, Florida), the said plaintiffs then and there being the owners of a certain steam tug named E. E. Simpson, which they used in the business of towing vessels and timber in the waters of Pensacola bay and the tributaries thereof, and the said defendant being then and there engaged * * under the authority of law in the business of transporting freight and passengers for hire over the line of railroad extending from the county aforesaid across the county of Santa Rosa, from east to west, the said defendant was then and there engaged in the said business and accomplishing the said transportation between the said counties by means of a certain bridge across the waters of Escambia bay, a navigable stream, and an arm of the said bay of Pensacola; the said bridge being laid upon piles driven into the soil forming the basin of the said

bay, and so near together as to totally obstruct the navigation of the said Escambia bay, except at a point about the middle thereof where the defendant had and maintained a drawbridge, through which all vessels and other craft navigating the said Escambia bay were compelled to and did pass in proceeding from points north of said bridge to the city of Pensacola. And the plaintiffs in fact aver that on the day and date aforesaid, in the county aforesaid, while their said boat was engaged in the navigation of the said bay, in the prosecution of her lawful business, she was compelled to and did pass through the said draw in the said bridge, which said draw it was the duty of the defendant to keep clear of obstructions so as to enable the same to be safely navigated by all vessels which might have navigated the said waters had said bridge not been erected at all by the defendant. And the said plaintiffs in fact aver that their said boat could and would have safely navigated the said waters had the said bridge not been built as aforesaid, but the defendant permitted the * * space of the said draw through which said boat had to pass to become obstructed by snags, posts, logs and other obstacles below the surface of the water and invisible to persons in plaintiffs' said boat, in so much that when the plaintiffs' said boat undertook to pass through the same her propeller struck against the said obstructions and was broken, so that the plaintiffs were compelled to procure a new wheel, paying therefor the sum of two hundred and forty-four and 88-100 dollars, its reasonable value. Yet the defendant fails to pay the same or any part thereof, to the plaintiffs' damage of one thousand dollars, and, therefore they sue,'' etc. The ground of the demurrer to this declaration was: ''That it sets forth no breach of any obligation of the

defendant towards the plaintiffs.'' It will be observed from this declaration that there is no allegation therein that the occupancy of the navigable water known as Escambia bay by the defendant railway company with its railway, piles, track and bridge was in anywise unlawful or unauthorized; but, on the contrary, it expressly alleges that the defendant ''was then and there engaged *under the authority of law* in the business of transporting freight and passengers for hire over the line of railroad extending from Escambia county across the county of Santa Rosa, from east to west, accomplishing the said transportation between the said counties by means of a certain bridge across the waters of Escambia bay,'' etc.

The declaration admitting, as it does, that the defendant has the lawful authority to occupy the waters of this bay with its road, the company can not be held in fault in having it there, unless it be that in the erection or use of its authorized structures it has, in some unlawful manner destroyed, or *unnecessarily* abridged or obstructed its usefulness to the public as a navigable highway. Our next inquiry, then, from the declaration is, does it charge upon the defendant any default in the manner in which it has exercised its authority to cross said bay; or in the structures or use of the structures erected by it to effect such crossing; or in the structural design, position, dimensions or use of the drawbridge designed to subserve the double purpose of affording to the railway the means of crossing the stream, and, at the same time serving to retain for such stream its usefulness us a highway? We find no complaint against the defendant in any of these respects; therefore we conclude that the defendant has not exercised and used its authority to occupy the stream in any unauthorized manner, but that what it

has done has been lawfully done. What, then, is the defendant's default that has wrought the damage complained of? We find it in the allegation that "the defendant *permitted* the space of the said draw through which said boat had to pass to become obstructed by snags, posts, logs and other obstacles below the surface of the water and invisible to persons in plaintiffs' said boat, in so much that when the plaintiffs' said boat undertook to pass through the same her propeller struck against the said obstructions and was broken," etc. It will be observed that in this, the gravamen of the complaint, there is no charge that the alleged obstructions were present in the waters under the draw through any instrumentality of the defendant, or in consequence of any faultiness in its structures, but the charge is, that the defendant *"permitted"* the space under the draw to "become obstructed," thereby implying that the obstructions were present there, not through the active instrumentality of the defendant, but through other agencies, and that the defendant was in default in not removing them, and in passively permitting them to remain there. In other words, as is contended here, it is assumed by the plaintiffs that it is the defendant's *duty* at all times to keep the water highway passing through and under its drawbridge free from all obstructions, no matter how they become present there. And the injury resulting to plaintiffs' boat from the defendant's neglect of this its alleged duty is the foundation for the suit. In this contention we can not agree with the counsel for the appellees. The fact that the company, when authorized to construct its road across a navigable stream, is granted such authority upon the implied condition that it shall cross it in such manner that it shall retain its usefulness as a public highway without unnec-

essary abridgement, and that the invention of the movable drawbridge enables it to comply with this condition in its authority, necessarily carries with it the idea that the *open space*, simply *spanned by its draw*, is left, *not for the company's use, nor under its care or control*, but free and clear of *any of its structures, as the public highway for use by the public*, subject to the same *custody*, *control* and *care* as any other part of the stream spanned. The company, except to span it with their movable draw, *temporarily* for the passage of its trains, has no more authority or control over such open space, than it has over any other part of such public stream not in contact with its works; and is not charged with the duty of keeping it free and clear of obstructions present without any instrumentality or fault on its part, and is under no more obligation to remove them from time to time, than it is under to keep any other part of the stream free from similar obstructions. Its whole duty is performed when it properly occupies with its necessary and proper structures the space, and no more than the space, permitted to it, and so uses its structures that they shall not unnecessarily abridge or impede the rights of the public. The open space left to be simply *spanned* by its draw is left, not only to the free *use*, but to the *control* and *care* of the public. From this conclusion it becomes apparent that the defendant's demurrer to the plaintiffs' declaration should have been sustained. Ward vs. L. & N. R. R. Co., (Tenn.), 3 Am. & Eng. R. R. Cases, 506.

The judgment appealed from is reversed, with directions to sustain the defendant's demurrer to the declaration.