# Mauldin *v.* Central of Ga. Ry. Co.

### *Maintaining Nuisance.*

(Decided February 13, 1913.　Rehearing denied April 23, 1913.
61 South. 947.)

1. *Navigable Waters; Bridges; Authorizing Construction and Maintenance.*—It is within the power of the states to authorize the construction of bridges across navigable streams within their limits, until Congress has taken cognizance thereof or acted thereon.

2. *Same; Obstructions; Actions; Pleading.*—A complaint which alleges the construction of a bridge across a navigable stream by a defendant, the piers or substructure of which obstructed the passageway of the stream, except for the narrow spaces between such piers, that driftwood had collected against the substructure obstructing the use of the river for the purpose of floatage of logs and timber, and causing plaintiff special damages, but which fails to allege whether it was built, since the passage of the Act of Congress of March 3, 1889, fails to show the maintenance of the bridge was a public nuisance.

3. *Pleading; Construction.*—Pleading will be construed most strongly against the pleader.

4. *Same; Conclusion.*—Allegations that a bridge across a navigable stream constituted an unreasonable obstruction of navigation and

was maintained without authority of law were mere conclusions of the pleader.

5. *Evidence; Judicial Notice; Official Proceedings.*—State courts have no judicial knowledge as to whether plans and specifications for a bridge across a navigable stream was submitted to and approved by the Chief of Engineers and the Secretary of War as required by the Federal authorities; this being a fact to be determined by the jury from the evidence.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by C. M. Mauldin against the Central of Georgia Railway Company for damages for maintaining a public nuisance in the erection and maintenance of a bridge across a navigable stream. Judgment for defendant and plaintiff appeals. Affirmed.

EVANS & PARRISH, for appellant. The obstruction was prima facie a nuisance.—*Walker v. Allen,* 72 Ala. 456; 12 Fla. 328; 73 Ga. 306; 7 Ill. App. 599; 43 Me. 198*i*; 9 N. J. E. 754; 38 Barb. 286; 60 N. Y. 510; 23 Wis. 410; 4 Ind. 36. No amount of benefits to an indefinite number of individuals or to a community can countervail the public inconvenience resulting from the obstruction of a navigable river—*Gold v. Carter,* 49 Am. Dec. 712; 31 Fed. 354; 23 Wis. 154; 7 L. R. Eq. 377. The right of navigation is paramount to right of crossing by bridge or ferry.—1 Bizz. 511; 28 Wis. 522; *Babcock v. Herbert,* 3 Ala. 392. A bridge cannot be constructed and maintained across navigable streams without the joint or concurrent consent of the State and Federal Governments.—11 L. R. A. (N. S.) 106.

W. O. MULKEY, for appellee. Until Congress acts, the state has the right of control in permitting the erection of bridges over streams which are navigable only in its borders.—*Cardwell v. Bridge Co.,* 113 U. S. 205; *Hamilton v. R. R. Co.,* 119 U. S. 280. The state

having granted the right to construct the road by a
necessary implication granted the right to construct all
bridges as a necessary part thereof, and unless the
bridge is constructed contrary to the provisions of the
charter or the laws of the state, the bridge cannot be
said to be a nuisance.—*G. R. N. Co. v. Chesapeake Ry.
Co.*, 2 L. R. A. 540. All are entitled to a reasonable
use of the stream.—*Blackman v. Mauldin*, 51 South.
23; 27 Mich. 533; 33 W. Va. 14; 21 S. E. 941; Farnham
on Waters, 29. The complaint was therefore subject to
the demurrers interposed.—22 L. R. A. 368. There is
marked difference between the liability of he who con-
structs and he who maintains.—10 A. & E. Ann. cases
350; 2 Ib. 868; 24 Cyc. 1125; 33 Ib. 706.

MAYFIELD, J.—This is an action in tort for the
maintenance of a public nuisance in that, as alleged,
the defendant obstructs a navigable stream. Demur-
rers were sustained to a number, if not to all, of the 14
counts of the complaint. The only errors assigned,
however, are as to counts 12, 13, and 14.

The plaintiff is alleged to have been engaged in the
business of rafting logs and lumber down the Choctaw-
hatchie river, and the defendant in the business of oper-
ating a commercial railroad which crosses this river.
It is alleged that a part of defendant's railroad con-
sisted of a bridge which spanned this river, and that
the piers or substructure of the bridge obstructed the
passageway of such stream, except a space of about 30
feet in width, and that driftwood collected against said
substructure and thus obstructed the use of said river
for the purpose of navigation in floating logs and tim-
bers down said river, and that on certain occasions
mentioned the plaintiff was damaged on account of said
obstructions, in that he lost a part of his rafts by reason

thereof. The main contention is narrowed down to this: Did any one of these counts sufficiently allege the maintenance of a public nuisance?

The law as to the obstruction of streams like the one in question, and as to the right of individuals for damages on account thereof, has been the subject of repeated adjudications in both the state courts and the federal court. The Supreme Court of the United States, after referring to these cases, in the case of *Cardwell v. Bridge Company*, 113 U. S. 210, 5 Sup. Ct. 425, 28 L. Ed. 959, said: "These cases illustrate the general doctrine, now fully recognized, that the commercial power of Congress is exclusive of state authority only when the subjects upon which it is exerted are national in their character and admit and require uniformity of regulations affecting alike all the states; and that when the subjects within that power are local in their nature or operation, or constitute mere aids to commerce, the states may provide for their regulation and management, until Congress intervenes and supersedes their action." In the same case it is said: "The control of Congress over navigable waters within the states so as to preserve their free navigation under the commercial clause of the Constitution, the power of the states within which they lie to authorize the construction of bridges over them until Congress intervenes and supersedes their authority, and the right of private parties to interfere with their construction or continuance, have been fully considered, and we are entirely satisfied with the soundness of the conclusions reached. They recognize the full power of the states to regulate within their limits matters of internal police, which embraces among other things the construction, repair, and maintenance of roads and bridges, and the establishment of ferries; that the states are more likely to appreciate the

importance of these means of internal communication and to provide for their proper management than a government at a distance; and that, as to bridges over navigable streams, their power is subordinate to that of Congress, as an act of the latter body is, by the Constitution, made the supreme law of the land; but that until Congress acts on the subject their power is plenary. When Congress acts directly with reference to the bridges authorized by the state, its will must control so far as may be necessary to secure the free navigation of the streams. In *Wilson v. Blackbird Creek Marsh Co.,* 2 Pet. 245 [7 L. Ed. 412], a dam had been constructed across a small navigable river in the state of Delaware, by authority of its Legislature; and this court held that the obstruction which it caused to the navigation of the stream was an affair between the government of the state and its citizens, in the absence of any law of Congress on the subject."

The case in which the question has probably received the fullest consideration is that of *Gilman v. Philadelphia,* 3 Wall. 713, 18 L. Ed. 96. The members of the court in that case were divided in opinion, and therefore the case was thoroughly and fully considered by the whole court and the law upon the subject learnedly and ably examined and expounded. In that case it was said: "It is almost as important that the law should be settled permanently as that it should be settled correctly. Its rules should be fixed deliberately and adhered to firmly, unless clearly erroneous. Vacillation is a serious evil. 'Misera est servitus ubi lex est vaga aut incerta.' * * * Commerce includes navigation. The power to regulate commerce comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States which are accessible from a state other than those in which they

[Mauldin v. Central of Ga. Ry. Co.]

lie. For this purpose they are public property of the nation, and subject to all the requisite legislation by Congress. This necessarily includes the power to keep them open and free from any obstruction to their navigation, interposed by the states or otherwise, to remove such obstructions when they exist, and to provide, by such sanctions as they may deem proper, against the occurrence of the evil and for the punishment of offenders. For these purposes Congress possesses all the powers which existed in the states before the adoption of the national Constitution, and which have always existed in the Parliament in England. It is for Congress to determine when its full power shall be brought into activity, and as to the regulations and sanctions which shall be provided. * * * The national government possessses no powers but such as have been delegated to it. The states have all but such as they have surrendered. The power to authorize the building of bridges is not to be found in the federal Constitution. It has not been taken from the states. It must reside somewhere. They had it before the Constitution was adopted, and they have it still. 'When the Revolution took place the people of each state became themselves sovereign, and in that character hold the absolute right to all their navigable waters and the soil under them for their own common use, subject only to the rights since surrendered by the Constitution to the general government.' * * * In the *Wheeling Bridge Case* this court placed its judgment upon the ground 'that Congress had acted upon the subject, and had regulated the Ohio river, and had thereby secured to the public, by virtue of its authority, the free and unobstructed use of the same, and that the erection of the bridge, so far as it interfered with the enjoyment of this use, was inconsistent with and in violation of the acts of Con-

gress, and destructive of the right derived under them; and that, to the extent of this interference with the free navigation of the Ohio river, the act of the Legislature of Virginia afforded no authority or justification. *It was in conflict with the acts of Congress, which were the paramount law.'* * * * It must not be forgotten that bridges, which are connecting parts of turnpikes, streets, and railroads, are means of commercial transportation, as well as navigable waters, and that the commerce which passes over a bridge may be much greater than would ever be transported on the water it obstructs. It is for the municipal power to weigh the considerations which belong to the subject, and to decide which shall be preferred, and how far either shall be made subservient to the other. The states have always exercised this power, and from the nature and objects of the two systems of government they must always continue to exercise it, subject, however, in all cases, to the paramount authority of Congress, whenever the power of the states shall be exerted within the sphere of the commercial power which belongs to the nation. The states may exercise concurrent or independent power in all cases but three: (1) Where the power is lodged exclusively in the federal Constitution. (2) Where it is given to the United States and prohibited to the states. (3) Where, from the nature and subjects of the power, it must necessarily be executed by the national government exclusively."

Appellant does not deny the law upon this subject to have been as announced above at the time it was so announced; but his insistence is that the law has been changed since those decisions by acts of Congress, which change is contemplated, or the power to make it, in the decisions above referred to. The act relied upon as working this change is that of March 3, 1899, c. 425,

and the amendments thereto, 30 State. at Large, 1151 (U. S. Comp. St. 1901, pp. 3540, 3541). While it is very true that these and many other federal statutes before and since, have made regulations in this matter, we do not find any which would have the effect of making the bridge in question a public nuisance, from anything appearing in this complaint. Those acts all provide that bridges like the one in question may be built across streams like the one in question, under the authority of the Legislature of a state, provided the locations and places therefor are submitted to, and approved by, the Chief of Engineers and the Secretary of War before their construction is commenced. There is no allegation in this complaint that the structure was built since the passage of the act of Congress referred to, or that the structure was built without the approval of the War Department, as is provided for in the statute. In fact, there is no claim here that the initial structure was wrongfully or unlawfully erected, but the gravamen of the charge is that it has been allowed to become a nuisance by the accumulation of driftwood against the piers or substructure of the bridge, so as to obstruct navigation.

Construing the counts most strongly against the pleader, as we are required to do, no special damage would have come to him, for which alone he sues and can sue in this action, except for the fact that driftwood was allowed to collect against the substructure and thus obstruct navigation for his rafts. The specific allegation is as follows: "That, by so maintaining and operating said bridge, said river became liable to be blocked, as to navigation, by loose timbers floating down said river and lodging against the supports of said bridge; that it became the duty of defendant to keep open said passageway under said bridge for the passage

of rafts of timber floated down said river *  *  *  so
that when plaintiff approached said bridge with said
rafts of timber on, to wit, at times between the 28th
of September and the 3d of October, 1907, plaintiff
found said passageway under said bridge so blocked as
above described, and as a result thereof plaintiff was
delayed, to wit, 150 days in getting his timber to mar-
ket," etc. There is no allegation in any one of the three
counts complained of that the bridge was built without
authority of law; nor is there any claim of damages for
the erection or creation of a nuisance other than that
arising from allowing the driftwood to collect against
the substructure of the bridge, which obstructed navi-
gation for the purposes for which plaintiff used the
river, thereby causing him to suffer special damages.

The character and capacity of the river in question,
as for navigation, was discussed and considered in the
case of *Blackman v. Mauldin,* 164 Ala. 337, 51 South. 23,
27 L. R. A. (N. S.) 670. It was there held to be naviga-
ble as for floatage, such as rafts, as is claimed in this
case. In the case of *Trullinger v. Howe,* 53 Or. 219,
97 Pac. 548, 99 Pac. 880, 22 L. R. A. (N. S.) 545, it is
said: "The right of the public to use a navigable or
floatable stream in its natural condition is not para-
mount to the right of a riparian owner to construct
dams therein and use the waters for power purposes,
so long as he does not materially affect or abridge the
public right. The rights of each must be exercised with
due regard to the existence and preservation of the
rights of the other. The right of passage is, to some
extent, necessarily the dominant right, because it is the
right to move on or by. It, in the nature of things,
cannot be exercised unless the other temporarily yields
to it, but it is not an exclusive right, and must not be
usurping, excessive, or unreasonable." If this be true

as to individual riparian owners, surely it must be equally true as to public service corporations, such as railroads, common carriers, who are authorized to cross, and of necessity must cross, such streams with their lines of railroads.

The case of *P. & A. R. R. Co. v. Hyer,* 32 Fla. 539, 14 South. 381, 22 L. R. A. 368, is very much like the case at bar. That was a suit by a navigator against a railroad company for obstructing navigation by allowing logs, etc., to accumulate under the draws of its bridge, thereby breaking the propeller of plaintiff's boat. The court in that case said : "What, then, is the defendant's default that has wrought the damage complained of? We find it in the allegation that 'the defendant permitted the space of the said draw, through which said boat had to pass, to become obstructed by snags, posts, logs, and other obstacles below the surface of the water and invisible to persons in plaintiffs' said boat, insomuch that, when the plaintiffs' said boat undertook to pass through the same, her propeller struck against the said obstructions and was broken,' etc. It will be observed that in this, the gravamen of the complaint, there is no charge that the alleged obstructions were present in the waters under the draw through any instrumentality of the defendant, or in consequence of any faultiness in its structures, but the charge is that the defendant 'permitted' the space under the draw to 'become obstructed,' thereby implying that the obstructions were present there, not through the active instrumentality of the defendant, but through other agencies, and that the defendant was in default in not removing them and in passively permitting them to remain there. In other words, as is contended here, it is assumed by the plaintiffs that it is the defendant's duty at all times to keep the water highways passing through and under

its drawbridge free from all obstructions, no matter how they become present there. And the injury resulting to plaintiffs' boat from the defendant's neglect of this, its alleged duty, is the foundation for the suit. In this contention we cannot agree with the counsel for the appellees."

While there are allegations in the complaint that the bridge constituted an unreasonable obstruction of the navigation of said river, and was maintained by the defendant without authority of law, this is a mere conclusion of the pleader, not supported by allegations of facts. As we gather from the brief of counsel, the only contention is that there was a lack of authority from Congress to build the bridge, and thus to partially obstruct the navigation of this stream.

As before stated, the federal law requires only that the plans and specifications for such structures be submitted to, and approved by, the Chief of Engineers and by the Secretary of War before construction be commenced. If this was not done in the present case, it should have been alleged. This is not a matter of which the trial court could, or this court can, take judicial knowledge. So far as this court can know, the Chief of Engineers and the Secretary of War may have approved the specifications submitted to them for this particular bridge, and it may have been built, and have remained ever thereafter, according to such specifications. Or it may be that no specifications were ever made or submitted to them. We have no judicial knowledge on this subject. This is a question of fact and not of law.

Recurring to the initial or original proposition stated in the opinion, which is the real question passed upon by the lower court, and insisted upon as error on appeal, we do not think that either count 12, 13, or 14

[Mauldin v. Central of Ga. Ry. Co.]

showed the maintenance of a public nuisance, and in our opinion the trial court, for this reason, properly sustained demurrers to each of these counts. Construing the pleadings most strongly against the pleader, as we are required to do, we do not think that the counts showed the maintenance of a public nuisance. They were for this reason subject to the demurrer interposed. We concede that each of the counts does show such special damages as would entitle the plaintiff to recover, if he had showed that the defendant had maintained a public nuisance. We gather from the pleadings and from the brief of counsel that the question presented to the trial court was whether any one of these three counts (12, 13, or 14) sufficiently showed the maintenance of a public nuisance. We do not think that these counts presented, or were intended to present, the question of the erection or creation of a public nuisance, but only the question of maintaining such a nuisance. We are reviewing on this appeal, of course, only the questions presented to and decided by the trial court. Considering the case in this light, as we are constrained to consider it, we are not prepared to say that the trial court erred in the rulings on the demurrers to counts 12, 13, or 14.

This, of course, must result in an affirmance of the judgment of the trial court, whatever may be the absolute rights of the litigants.

Affirmed.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.