## MUIR v. LOUISVILLE & N. R. CO.

(District Court, W. D. Kentucky. March 2, 1918.)

1. CITIZENS ⬯2—CORPORATIONS.

A corporation is a citizen of the state under whose laws it was organized.

2. REMOVAL OF CAUSES ⬯95—EFFECT OF FILING PETITION AND BOND.

Where defendant appeared in an action in the state court, and tendered therein and prayed leave to file a petition for removal of the cause to the federal court, at the same time tendering a bond in the terms prescribed by law, with good and sufficient sureties, the cause was effectively removed to the federal court, notwithstanding the state court refused to enter the removal order sought.

3. COURTS ⬯508(8)—REFUSAL TO ENTER ORDER OF REMOVAL—INJUNCTION.

Where defendant's filing of a petition for removal of a cause to the federal court and tender of a bond effectually removed the cause, though the state court declined to enter an order of removal, the federal court may protect its jurisdiction by injunction order, restraining the plaintiffs and their attorneys from further prosecuting the action in the state court.

4. EVIDENCE ⬯46—JUDICIAL NOTICE—PRESIDENTIAL PROCLAMATIONS.

The courts will take judicial notice of the proclamation of the President of December 26, 1917, declaring the necessity to take possession and control of certain systems of transportation in the United States, including railroads.

5. UNITED STATES ⬯58½—PROPERTY—SEIZURE—LITIGATION.

Where property of the United States has been seized or impleaded in litigation between individuals, the government, through the suggestion by the district attorney, in a form showing title to the property in the United States, may secure release of the property without becoming a party, in which event the litigation must cease.

6. UNITED STATES ⬯125—JURISDICTION—ACTIONS AGAINST UNITED STATES.

Where by proclamation of December 26, 1917, the President, under Act Aug. 29, 1916, c. 418, § 1, 39 Stat. 645 (Comp. St. 1916, § 1974a), providing that the President is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same for the transfer or transportation of troops, war material, and equipment, or for such other purposes connected with the emergency as may be needful or desirable, took possession of and assumed control of every system of transportation within the United States, including railroads, the Secretary of the Treasury being appointed Director General, actions thereafter begun against a railroad company for causes arising prior to the proclamation cannot, despite the extremely broad war-making powers of Congress under Const. art. 1, § 8, be defeated on the ground that, as the United States had taken over the property of the railroad company and had not given its consent to be sued, the courts were without jurisdiction, the actions in effect being against the sovereign, for the doctrine that, where property of the government is seized or impleaded in litigation between individuals, the government may secure its release by suggestion of that fact, in which case the litigation must end, applies only where property has been actually seized or impleaded, and the mere institution of actions against railroad companies was not a seizure of property of which the government had taken control.

7. REMOVAL OF CAUSES ⬯19(1)—FEDERAL COURTS—JURISDICTIONS—"ACTIONS ARISING UNDER CONSTITUTION OR LAWS OF UNITED STATES."

In such case, as Act Aug. 29, 1916, does not authorize the President to make any proclamation of any character in taking possession and assum-

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing control of transportation systems, and thus the presidential proclamation is without force of law, actions begun in the state court against a railroad company after the President had taken possession of railroads, which were based on the negligence of the railroad company occurring prior to the executive action, cannot be removed to the federal courts, under Judicial Code (Act March 3, 1911, c. 231) § 28, 36 Stat. 1094 (Comp. St. 1916, § 991 [1]), on the ground that they were actions arising under the Constitution and laws of the United States, for the cause of action was not based on any act of Congress, and the proclamation of the President, though it might have afforded basis for the actions, was without effect as law.

8. UNITED STATES ⊂⊃28—LEGISLATIVE DEPARTMENT—EXECUTIVE REGULATIONS—STATUTE.

While Congress may authorize heads of executive departments or other officials to make regulations within certain limits, and when made within those limits such regulations have the force and effect of law, the delegation of authority to make regulatory orders gives no power to add to, take from, or modify the limitations prescribed by Congress, and, as Act Cong. Aug. 29, 1916, authorizing the President to take possession of and assume control of transportation systems through the Secretary of War, made no provision for presidential proclamation providing an elaborate scheme of control, such proclamation has no force as law.

9. CONSTITUTIONAL LAW ⊂⊃105—VESTED RIGHTS—RETROACTIVE LEGISLATION.

Where, as a result of a railroad wreck, plaintiffs acquired causes of action against a railroad company arising out of the relation of carrier and passenger, such rights were then vested, and they cannot be taken away or divested by authority exerted thereafter, either by a legislative body or by an executive officer; and hence, though the President thereafter took possession of and assumed control of railroads under Act Aug. 29, 1916, such vested rights of action could not be interfered with.

10. REMOVAL OF CAUSES ⊂⊃25(1)—ACTIONS ARISING UNDER LAWS AND CONSTITUTION OF UNITED STATES—RIGHT OF REMOVAL.

To remove from the state to the federal court an action on the ground that it arose under the Constitution and laws of the United States, such fact must appear from the initial pleading of the plaintiff; and, where it did not appear, such cause cannot be removed, though the action was one against a railroad company, and it was contended that, because the President, under Act Aug. 29, 1916, had taken possession of and assumed control of railroads before the initiation of the action, the cause was one removable, as arising under the laws of the United States.

Actions by J. W. Muir, administrator of George S. Muir, by Jasper W. Muir, administrator of N. W. Muir, by Thomas J. Miller, administrator of Mabel Brown Miller, by H. H. Mashburn, administrator of Emily Mashburn, by R. H. Miller, administrator of Lillian Miller, and by J. E. Smith against the Louisville & Nashville Railroad Company, which were begun in the state court and removed by defendant to the federal court. On motion to remand. The proceedings were also consolidated with suits in equity by the Louisville & Nashville Railroad Company against Jasper W. Muir, administrator of George S. Muir and others, and against the other plaintiffs and their attorneys, to enjoin proceedings in the state court, which had declined to enter an order for the removal sought. Motions for remand sustained, and the temporary restraining order issued on the several bills set aside and the bills dismissed.

Nat. W. Halstead and J. D. Wickliffe, both of Bardstown, Ky., and Frank P. Straus and Howard B. Lee, both of Louisville, Ky., for plaintiffs.

Helm Bruce, H. L. Stone, E. S. Jouett, and B. D. Warfield, all of Louisville, Ky., for defendant.

WALTER EVANS, District Judge. The first six of the above-styled suits are actions at law, which have been removed to this court, while the other six of them are suits in equity, brought in this court, seeking to enjoin separately the prosecution in the state court of each of the others.

[1] The Louisville & Nashville Railroad Company (which will be called the Railroad Company) is a corporation organized under the laws of this state, and therefore is a citizen of Kentucky. On December 20, 1917, there occurred at Shepherdsville, Ky., an accident to a passenger train of the Railroad Company which brought instant death to at least 45 passengers, ultimate death to not less than 4 more of them, and suffering and injury to 47 others. They were all at the time passengers on a train operated locally between Louisville, Ky., and Bardstown, Ky., which cities are about 40 miles apart. The disaster was the most distressing which had ever happened in the long life of the Railroad Company, and brought from its president, Mr. Milton H. Smith, a published statement, notably commendable in spirit and tone (which we are much tempted to insert in full), admitting liability and offering to make settlements in the fairest spirit. No adjustment of damages, however, could be reached in these cases.

At various dates between January 9, 1918, and February 2, 1918, the six actions at law first above styled were commenced by the respective plaintiffs therein against the Railroad Company in the Nelson circuit court of Kentucky. The amount sued for ranged from $100,000 to $35,000 in those five of the suits where death had occurred, and $20,000, the amount sued for in that one of the actions where death did not result from the injuries received.

[2] The term of the Nelson circuit court, then next, began on the second Monday (the 11th day) of February, 1918. At that time the Railroad Company appeared therein and tendered to that court and asked its leave to file in each of the cases its petition for the removal thereof to this court. It also with each petition tendered a bond in the terms prescribed by law, with good and sufficient surety thereon. Upon consideration of the motions for leave to file the several petitions for removal the Nelson circuit court denied each of them, and declined to enter an order for the removal sought, though in each case the court found the bond tendered to be sufficient. Obviously each of the suits was effectively removed to this court by what had been done. Traction Co. v. Mining Co., 196 U. S. 239, 244, 25 Sup. Ct. 251, 49 L. Ed. 462; Marshall v. Holmes, 141 U. S. 595, 12 Sup. Ct. 62, 35 L. Ed. 870, and cases cited; Stevenson v. Illinois Central R. R. Co. (C. C.) 192 Fed. 958.

A transcript of the record in each case was filed in this court on the 16th day of the same month. In no one of the six actions at law thus

removed was there any person sued as a defendant, except the Railroad Company. Each plaintiff in the six actions was a citizen of Kentucky, and his action was against another citizen of the same state. Each plaintiff in his pleading alleged in clear and explicit terms that the injured person, at the time of the accident, had been a passenger on the train then owned and operated by the Railroad Company, and that while such passenger, and by the gross and inexcusable negligence of the defendant in operating its train, the injury complained of had been inflicted. These averments in substance stated the whole cause of action, and nothing else was relied upon by the respective plaintiffs as a basis for the recovery sought.

[3] In this condition of the record the plaintiff in each of the actions thus removed entered a motion to remand it to the state court; but as that court had refused to remove the cases, and as each of them was upon its docket for trial at the term then in session, the Railroad Company filed in this court its separate bill in equity against each of the several plaintiffs in the actions at law and his attorneys therein, and thereby sought a separate injunction against the plaintiffs severally and their respective attorneys to prevent them from further prosecuting in the state court their respective actions which had been removed to this court. Pursuant to the prayer in its several bills, the Railroad Company moved in each case for an injunction pendente lite. Those motions and the motions to remand were all heard together, and must be determined upon the same propositions of law, and it is therefore convenient to embrace all of them in one opinion; it being apparent, we think, that, if this court has no jurisdiction, the actions at law must all be remanded to the state court, while, if the jurisdiction is here, that jurisdiction must be protected through the injunctions sought by the Railroad Company. This course is abundantly supported by the decision of the Supreme Court in Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 256, 25 Sup. Ct. 251, 49 L. Ed. 462, which affirmed the judgment of this court in 130 Fed. 794.

Section 24 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [Comp. St. 1916, § 991(1)]) among other things, provides that:

"The District Courts shall have original jurisdiction as follows:

"First. Of all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and arises under the Constitution or laws of the United States."

And section 28 of the Code (Comp. St. 1916, § 1010) provides that "any suit of a civil nature, at law or in equity, arising under the Constitution and laws of the United States, * * * of which the District Courts of the United States are given original jurisdiction," may be removed by the defendant or defendants therein to the District Court, if brought in a state court.

Under these provisions the Railroad Company in its petitions claims the right to remove the cases. It is entirely clear, from the petitions of the several plaintiffs filed in the state court, that the amount in controversy in each case exceeds the sum or value of $3,000, exclusive of interest and costs, and equally is it clear that the cause of action

stated by each plaintiff is not one which appears from the plaintiff's pleading itself to arise under the Constitution or laws of the United States. This being so, the Railroad Company admits at the outset that it is confronted with many adverse rulings of the Supreme Court. Only one of these need be cited, for in its opinion in In re Winn, 213 U. S. at page 465, 29 Sup. Ct. 516, 53 L. Ed. 873, the court fully covered the subject when it said:

"It is the settled interpretation of these words, as used in this statute con- ferring jurisdiction, that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of ac- tion shows that it is based upon those laws or that Constitution. It is not enough, as the law now exists, that it appears that the defendant may find in the Constitution or laws of the United States some ground of defense. Louisville & Nashville Railroad v. Mottley, 211 U. S. 149 [29 Sup. Ct. 42, 53 L. Ed. 126], and cases cited. If the defendant has any such defense to the plaintiff's claim it may be set up in the state courts, and if properly set up, and denied by the highest court of the state, may ultimately be brought to this court for decision."

Nevertheless the Railroad Company seeks to maintain the jurisdiction of this court upon the general proposition that the facts stated in its petitions for removal are such as, if true, will authorize a depart- ure from the general rule. We are thus brought to the novel, in- teresting, and important questions presented for determination. Aid- ed by the able, ingenious, and energetic arguments of counsel for the various parties, we have given them very careful consideration.

The sole ground upon which the right of removal in each case is claimed is that the suit arises under the Constitution or laws of the United States; but obviously, as no one of them arises under any express clause or provision of the Constitution itself, the right to re- move must be regarded as asserted upon the single proposition that each of the several actions arises under the "laws of the United States." Accordingly in each of its petitions for removal the Railroad Company states that in the act making appropriations for the support of the army for the then current fiscal year, approved August 29, 1916, there was a clause which reads as follows:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable." 39 Stat. 645, 4 Comp. Stat. p. 3778, § 1974a.

Each petition for removal also states that on December 26, 1917, the President, therein reciting that previously in 1917 Congress had de- clared war, first against Germany, and afterwards against the Austro- Hungarian government, and that it had become necessary, under the legislative provision just copied, to take possession and control of certain systems of transportation for the transfer or transportation of troops, war material, and equipment therefor, and for other useful and desirable purposes connected with the prosecution of the war, had made proclamation that he, as President, through Newton D. Baker, Secretary of War, would take possession of and assume control at 12

o'clock noon on the 28th day of December, 1917 (though for accounting purposes such taking possession should only operate as from midnight on the 31st day of December, 1917), of every system of transportation within the United States, including railroads.

[4] It also appears in the proclamation, of which we take judicial notice, that while, nominally, possession and control of the systems of transportation are to be taken through the Secretary of War, in that document in plainly expressed language it is "directed that the possession, control, operation and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads," and as such is given all the power and authority fully set forth in the proclamation, although this was done in "time of war" and obviously in a war emergency. As all know, Mr. McAdoo was then and is now the Secretary of the Treasury. It is also shown that at the time appointed in the proclamation he, as the Director General of Railroads, took full possession and control of such of the defendant's property as is designated in the proclamation, and yet holds the same.

In these circumstances the Railroad Company contends: (1) That as all its property has been taken from it in the manner stated, as the government cannot be sued without its consent, and as such consent has not been given, the courts have no right to proceed against the defendant in these cases; (2) that, as matter of law, it results from the facts shown that the actions which have been removed must be considered as having arisen under the laws of the United States, no one of them having been commenced in the state court until on or after January 9, 1918; and (3) that these facts bring about a situation which must be held to justify a ruling that these cases present an exception to the general rule that a removal cannot be sustained unless the plaintiff's own pleading shows on its face that his cause of action arises under the Constitution or laws of the United States.

[5, 6] These contentions involve questions of momentous importance, which, in the great crisis now upon the country, will only be discussed to the extent necessary to a proper determination of the rights demanded under them by the Railroad Company. Our decision must and will be limited to ascertaining what those rights are in these cases.

By article 1, section 1, of the Constitution, all the legislative power of the government is vested in the Congress. By the same article, section 8, Congress is given power to declare war, to raise and support armies, and to make all laws which may be necessary and proper for carrying into execution all the powers given by the section. All agree, and the courts hold, that in time of war the Congress has wide discretion in determining what is "necessary and proper" to make good its declaration of war against the enemies of the country. These provisions, in this connection, become all the more important because, in his proclamation, the President declared in express words that in taking control and possession of the railroads of the country he was acting by virtue of that statutory provision and the resolutions declaring war. This being true, and the Railroad Company making claim

to the right of removal of these cases from the state court upon the same statutory provisions and the action of the President thereunder, we are brought to the necessity of analyzing the provisions of that enactment. While by no means comprehensive, nor possibly adequate to the great emergency which subsequently arose, they are nevertheless, so far as they go, neither doubtful nor ambiguous. In order that they may serve the great purposes which they were intended to accomplish, they necessarily must be construed to carry the implied right, when control and possession of the transportation systems are taken under them, to have those systems utilized and operated in the most efficient manner. We shall yield full effect to these propositions in what we say concerning the proper construction of the provisions themselves, so far as these cases demand it.

The statute authorizes the President (a) in time of war, (b) through the Secretary of War, (c) to take, possess, and assume control (d) of any system of transportation, to the exclusion, if necessary, of any other transportation thereon, (e) for the transfer or transportation of troops, war material, and equipment, and for such other purposes connected (f) with the emergency as may be needful or desirable. Under no established rule of interpretation can it be doubted that it was the intention of the legislative body to authorize, in time of war, the War Department and no other to take over the railroads for war purposes, such as transportation of troops and war material, and for such other purposes as might be desirable in the emergencies of war. Besides being an appropriate function of the War Department, it was the plain meaning of the statute which Congress enacted that the War Department should have authority over it, and even if we assume (which is inconceivable) that the Secretary of War declined for that department to take up the war work indicated, we find nothing in the statute which authorizes it to be taken up by the Treasury Department, nor by a Director General of Railroads; Congress not having intrusted the work to either. And the situation, if strict rules were to operate, might involve consideration of the question whether the rule stated by the Supreme Court in Smith v. Black, 115 U. S. at page 319, 6 Sup. Ct. 56, 29 L. Ed. 398, to the effect that, "where there is a statute requiring a thing to be done by a known and responsible public officer, it may well be held that he must do it in person," would not apply.

But the Railroad Company in this case makes no objection to the taking over of its property under the proclamation, and we are no further concerned with the situation than to inquire whether there is anything in the entire record from which we may fairly draw the legal conclusion, either upon the statute or the President's proclamation, or upon anything done under either, that the several actions which have been removed arise under the Constitution or laws of the United States, and especially as all that has been done by the government was done after each of the causes of action had become perfect as against the Railroad Company.

True, as the Railroad Company insists, the law is that the United States cannot be sued without its consent; also it is true that the government has not consented to being sued in these cases, though, if

ownership and title to the property of the Railroad Company has passed to the United States, the authorities establish the proposition that, if that property has been seized or impleaded in a litigation between individuals, the government, through the district attorney, may secure its release by suggestion to the court without making the government a party. In such cases, when the district attorney makes the suggestion in a form which shows the United States to have title, the litigation must end. Stanley v. Schwalby, 147 U. S. 512, 513, 13 Sup. Ct. 418, 37 L. Ed. 259; Carr v. United States, 98 U. S. 438, 25 L. Ed. 209; The Siren, 7 Wall. (74 U. S.) 153, 154, 19 L. Ed. 129. This doctrine, however, applies only where the property of the United States has been seized or is impleaded in some litigation. So far nothing of that sort has occurred or appears here, and we conclude that the first of the contentions of the Railroad Company above stated cannot be maintained.

[7-9] The second of the contentions of the Railroad Company, briefly stated, is that the actions were all brought in the state court after the promulgation of the President's proclamation and the taking possession thereunder of property of the Railroad Company. Much of what we have already said is applicable to this contention, but it requires further and somewhat more radical treatment, and especially must we ascertain what, if any, effect upon the rights of the plaintiffs in the litigation the proclamation of the President can have.

Certainly the proposition is so well established as to be elementary that Congress may authorize heads of departments or other officers to make regulations within certain limits, and, when made within those limits, such regulations have the force and effect of law, and may be enforced as such; but it has often been held that the delegation of authority to make regulatory orders gives no power to add to, take from, or modify the limitations prescribed by Congress. United States v. 200 Barrels Whisky, 95 U. S. 576, 24 L. Ed. 491; United States v. 11,150 Pounds Butter, 195 Fed. 663, 664, 115 C. C. A. 463. In many instances proclamations by the President, authorized by the Constitution or by statute, have been given great effect. Notably was this so in United States v. Klien, 13 Wall. 129, 20 L. Ed. 519, and Armstrong v. United States, 13 Wall. 154, 20 L. Ed. 614, and other cases.

On its face the act of August 29, 1916, does not give authority to the President to make or promulgate a proclamation of any character. No one, however, could or would contend that he had not abundant authority to issue such documents whenever he thought it proper to give notice or information to the public. But such papers cannot have any effect as laws, in the absence of express constitutional or congressional authorization. We cannot say that the President had any view to the contrary of this when he issued the proclamation in question; but the second contention of the Railroad Company, which demands consideration, is and necessarily must be based upon the idea that that document did have the force and effect of law, and should, as such, be enforced to the extent that it therefrom be made to result that any suit subsequently brought against a railroad company whose property had been taken into possession under the statute (even if

such suit were brought upon a cause of action which had been perfected on or before December 20, 1917) arose under the laws of the United States. While the statute is silent upon the subject of litigation of any character, it by no means follows that causes of action might not arise thereunder. The vital question here is not that, but is this: Did the causes of action of the several plaintiffs, as stated in their petitions, so arise, or did they arise under the proclamation of the President? In the familiar and oft-cited case of Tennessee v. Davis, 100 U. S. at page 264, 25 L. Ed. 648, the Supreme Court said:

"Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted."

This language was repeated in the case of Bock v. Perkins, 139 U. S. at page 630, 11 Sup. Ct. 677, 35 L. Ed. 314, and, when we subject the cases before us to this authoritative test, can we properly say it is met? We think clearly not, because obviously these cases arose out of the facts stated in the pleadings of the several plaintiffs, and not out of the legislation of Congress. Nevertheless, in effect it is urged that, when the statute is read in connection with the proclamation of the President, the test is met. There possibly might be great force in this view, were it not, first, that the statute does not authorize the proclamation, and therefore leaves that document without force as legislation of Congress or as a law of the United States; and, second, that the causes of action arose upon facts plainly stated by the plaintiffs, and consequently, even if it could by any possibility be said that they arose under the proclamation, they nevertheless would not arise under any law of the United States—the proclamation not being such. The statute is silent upon the subject of litigation of any character, and does not attempt to close either the state or federal courts to any person who might already have an existing cause of action against any railroad company upon the mere ground that the property of the company had been taken over for a temporary though most important use. The proclamation designates Mr. McAdoo as Director General of Railroads. This position being unknown to the law, its powers are not fixed; but we suppose it was the intention to make him, not only a member, but the head, of the board of directors of each railroad company, the property of which was taken into possession—thus giving him, instead of the Secretary of War, the control of all operations under the statute. Many rules for him to enforce appear to be prescribed in the proclamation, but we pass over all of them as having no bearing upon the cases before us, except that one of them which is in this language:

"Except with the prior written assent of said Director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine."

We find no statutory warrant for this provision in the proclamation, and especially none for the exception mentioned in the last clause of

it. We may, however, ignore that exception, because nothing appears to show any attempt to carry it into effect; but, even if we suppose that the other limited interruption of the rights of litigants while the war goes on should be patriotically accepted by all good citizens, litigant and otherwise, it by no means follows that the law authorizes any interference with the course of judicial procedure between litigants before the time arrives when there might be attempts to seize, under execution issued upon final judgments, property in the temporary possession of the United States under the proclamation. Nor can we see how even a right to prevent interruption of such temporary possession after final judgment has been rendered can, per se and independently of the nature of the cause of action, support the theory of the Railroad Company that the suits in which judgments may be rendered arise under the Constitution or laws of the United States.

The non sequitur becomes apparent when we recall the exact nature of the cause of action declared upon by the respective plaintiffs. Upon the allegations of his pleading each plaintiff seeks a money judgment and nothing else. Neither of the plaintiffs has made any claim in his pleading to be entitled, under our Code of Practice, to any provisional remedy like an attachment or other similar writ under which any part of defendant's property could be seized pendente lite. When, if ever, judgments shall be rendered in favor of the plaintiffs, the question of means for their enforcement shall arise, it may demand the considera-tion of the trial court; but at present we are concerned only with the question of whether we have jurisdiction—not, indeed, to seize property, but "to hear and determine a cause." The question of jurisdiction here must be determined upon the nature of the cause of action, and from that we ascertain whether it arises under any law of the United States.

Furthermore, it is obvious from the averments of his pleading that the cause of action of each plaintiff arose and was perfected immediately after the infliction of the injuries complained of. At once thereafter each plaintiff had a clear right to sue upon that cause of action. Each one of them promptly exercised that right and commenced his action at law in the state court. As it is quite obvious from the pleadings of the plaintiffs that each of the causes of action arose out of what occurred while the relationship of passenger and common carrier existed, and not out of any law of the United States, the right of each plaintiff to sue became a vested right on December 20, 1917, and cannot be taken away or devested by any authority exerted, ex post facto, either by a legislative body or by an executive officer of any degree. This proposition was clearly announced by the Supreme Court when, in Angle v. Chicago, St. Paul, etc., Railway, 151 U. S. at page 19, 14 Sup. Ct. 247, 38 L. Ed. 55, it said:

"A right of action to recover damages for an injury is property, and has a Legislature the power to destroy such property? An executive may pardon and thus relieve a wrongdoer from the punishment the public exacts for the wrong; but neither executive nor Legislature can pardon a private wrong or relieve the wrongdoer from civil liability to the individual he has wronged."

After the plaintiffs' causes of action had all arisen, the President's proclamation was promulgated, and in pursuance thereof possession

247 F.—57

and control of the Railroad Company's property was taken. Upon this state of fact as its sole basis the Railroad Company contends that each of the separate causes of action arose under the laws of the United States. After most careful consideration we have, upon the grounds stated, concluded that this contention has not been maintained and is not maintainable.

[10] The third contention of the Railroad Company is that the facts here justify the conclusion that these cases present an exception to the general rule that in order to remove the plaintiff's petition on its face must show how the action arises under the Constitution or laws of the United States, and in support of this suggestion the counsel for the Railroad Company cite cases like Pacific R. R. Removal Cases, 115 U. S. 1–24, 5 Sup. Ct. 1113, 29 L. Ed. 319; Texas & Pacific R. Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132; Texas & P. R. Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Macon Grocery Co. v. Atlantic Coast Line, 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300; Toledo R. R. v. Penna. Ry. (C. C.) 54 Fed. 730, 19 L. R. A. 387.

Careful consideration of each of these cases has failed to convince us that any one of them has any tendency in the direction suggested. It is an everyday construction of the Removal Act that the diverse citizenship of the parties may be shown for the first time in the petition for removal, for the reason that in stating a cause of action an allegation of citizenship is not material, and need not be made by the plaintiff; but it is different as to the amount in controversy. In respect to that the plaintiff must, in an action at law, state the amount he seeks to recover, and ordinarily the case is not removable unless the amount in controversy exceeds the sum or value of $3,000 and is claimed by the plaintiff in his pleading. So, in stating the nature of his claim, the plaintiff's pleading should show, and, if well constructed, does show, the nature of his claim and how it arises, and in this way, if he seeks to recover under the Constitution or laws of the United States, it will inevitably so appear. These propositions are the basis of the rule stated in the Winn Case, supra, and in the extract we have made from the opinion in that case the Supreme Court has pointed out that, if the defendant has any defense based upon the claim that the action is one arising under the Constitution and laws of the United States, he can set it up in the state court, and, if it is denied, he can carry the case to the Supreme Court.

The several motions of the plaintiffs to remand to the Nelson circuit court will be sustained for want of jurisdiction in this court. In each of the equity suits the temporary restraining order made at the hearing will be set aside, the motions for temporary injunctions will be each overruled, and each of the bills in equity will be dismissed, with costs.

Orders accordingly may be entered.