(85 South. 719)

**LAWRENCEBURG ROLLER MILLS CO. v. CHAS. A. JONES & CO.  (6 Div. 998.)**

(Supreme Court of Alabama.   Feb. 5, 1920.)

**1. Appeal and error ⬯1039(7)—Errors in rulings on pleas harmless, where affirmative charge was required.**

When the bill of exceptions sets out substantially all the evidence, if it is shown that on the issues made by the complaint and the general issue pleaded defendant was entitled to the general affirmative charge given at his request, in that plaintiff was not entitled to recover, though there may have been error in rulings on demurrer to special pleas, the same was without prejudice.

**2. Contracts ⬯346(2)—Allegata and probata must correspond.**

In actions on contracts as in other civil actions, the allegata and probata must correspond, for a party may not declare on one cause of action and recover on another.

**3. Sales ⬯355(4)—Proof of confirmation of contract held not to correspond with allegations.**

Where complaint alleged confirmation by seller of contract for shipment of flour, requiring buyer to accept shipment within August and September, but proof showed that confirmation was subject to "our (seller's) option," affirmative charge was required.

**4. Sales ⬯355(4)—Proof held not to sustain alleged contract.**

Where seller counted on a contract for shipment of flour executed by seller alone, and indorsed, "Attached wire confirming," and proof showed no such confirmation attached to contract, there was a variance.

**5. Sales ⬯85(1)—Contract subject to government regulation contemplates future regulation.**

Where contract to ship flour at stated price was subject to government regulation, it was immaterial that such regulation would not operate retroactively as to contracts made.

**6. Sales ⬯172—Impossibility of performance discharges contract.**

Where contract for sale of flour, if carried out, would give buyer a supply greater than that permitted by government regulation, the contract was discharged by impossibility of performance.

**7. Evidence ⬯47—Judicial notice taken of administrative rules.**

The court takes judicial knowledge of the rules and regulations promulgated under authority of the act of Congress of August 10, 1917 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛r), controlling price of wheat and flour.

Appeal from Circuit Court, Jefferson County; C. W. Ferguson, Judge.

Assumpsit by the Lawrenceburg Roller Mills Company against Charles A. Jones & Company. Judgment for the defendant, and plaintiff appeals. Affirmed.

London, Yancey & Brower, of Birmingham, for appellant.

The trial court erred in overruling demurrers to defendant's pleas 3 to 8, inclusive. 70 Ala. 417; 155 Ala. 516, 46 South. 760; 174 Ala. 389, 57 South. 464. The court erred in giving the affirmative charge for the defendant. 222 U. S. 511, 32 Sup. Ct. 114, 56 L. Ed. 288; 181 Ala. 591, 61 South. 947.

Miller & Graham, of Birmingham, for appellee.

Failing to prove material averments in any count of the complaint, defendant was entitled to a directed verdict. 38 Ala. 579; 150 Ala. 440, 43 South. 481; 161 Ala. 561, 49 South. 883; 166 Ala. 482, 52 South. 86. The letter constituted a new offer, not accepted, and denied recovery under count 3. 73 Ala. 75. The regulations applied to the contract. 86 U. S. 526, 22 L. Ed. 160. The

courts take judicial notice of such government rules and regulations. 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415.

THOMAS, J.  The action by plaintiff was on account stated: ' For goods, wares and merchandise sold to defendant, counts 1 and 2; for damages for the breach of contracts of sale of 1,500 and 1,000 barrels of flour, respectively, subject to purchaser's orders, setting out the contracts in the respective counts, 3 and 4 as amended. The contracts set out were in like form, of dates August 6 and 8, 1917, calling for 1,500 barrels of flour in the one and for 1,000 barrels of flour in the other, providing that shipments be made on purchaser's orders during August and September, and that, failing to order the same, vendor was given the right to cancel the contract or unshipped portion thereof, and to collect on unshipped portion the difference between the market value of the flour at date of sale and date of termination of the contract. The alleged contract of date August 8, 1917, was not signed by the defendant, but had written at the place for signature of buyer the words, "Attached wire confirming."

Defendant filed pleas of the general issue and special pleas 3 to 8, inclusive, to which demurrer was overruled. The special pleas set up the Food Control Act of Congress and orders made thereunder, providing for the fixing and controlling of the price of flour while this nation was at war.

Special plea 3 stated, in substance, that at the time of the making of the written contract sued on, it was agreed and understood as a part of the contract that, if Congress or the government made any regulations for the purpose of fixing or controlling the price of flour, or the amount or quantity of flour which a dealer might have on hand, then, in that event, the contract was to be terminated, and that on August 10, 1917, Congress passed the Food Control Act, and on August 24, 1917, Herbert Hoover, as Food Administrator, promulgated an order that no miller should make or have outstanding at any time contracts for flour, except those that required shipments within 30 days after date thereof, and that no miller should deliver products knowing that such delivery would supply the purchaser with an amount in excess of his requirements, and the contract was thereby abrogated.

For plea 4 defendant adopted all of plea 3, with the exception of the last paragraph, and added an averment that the contract in question did not require shipment of flour within 30 days.

For plea 5 defendant adopted all of plea 3 down to the last paragraph thereof, and in addition the averment that, had plaintiff shipped the flour contracted for, it would have done so, knowing that defendant would have thereby had on hand flour in excess of his requirements for 30 days.

For plea 6 defendant avers that one of the terms of the contract sued on was that the contract was subject to government food control regulations, and avers that on August 10, 1917, Congress passed an act regulating and controlling the distribution of flour, and fixing the price of wheat, and providing for administration agents to be appointed by the President; that the President appointed Mr. Hoover, who on, to wit, August 24, 1917, promulgated a regulation, in substance, that no miller should make a delivery or supply flour to any person in excess of his requirements for his business during a reasonable time thereafter, to wit, 30 days, and avers that the contract in question did not require delivery of flour within 30 days.

Pleas 7 and 8 were substantially like plea 6, with the added averment that had shipment been made defendant would have had on hand a supply of flour in excess of his requirements during the next 30 days.

[1] When the bill of exceptions sets out "substantially all the evidence," if it is shown that on the issues made by the complaint and the general issue pleaded defendant was entitled to the general affirmative charge given at its request, in that plaintiff was not entitled to recover, though there may have been error in rulings on demurrer to special pleas, the same was without prejudice, and reversal will not be had.  Conn v. Sellers, 198 Ala. 606, 73 South. 961, 962; Hill v. McBryde, 125 Ala. 542, 543, 28 South. 85; Andrews Mfg. Co. v. Porter, 112 Ala. 381, 385, 20 South. 475; Waldman v. N. B. & M. Ins. Co., 91 Ala. 170, 175, 8 South. 666, 24 Am. St. Rep. 883; 1 Michie's Ala. Dig. 559, § 1029, where the Alabama cases are collected.

[2] In actions on contracts, as in other civil actions, the allegata et probata must correspond, for a party may not declare for one cause of action and recover upon another. Iron Age Pub. Co. v. Western Union Tel. Co., 83 Ala. 498, 503, 3 South. 449, 3 Am. St. Rep. 758; Derrick v. Monette, 73 Ala. 75; U. S. H. & A. Ins. Co. v. Savage, 185 Ala. 232, 235, 64 South. 340; Green v. Southern States Lbr. Co., 163 Ala. 511, 514, 50 South. 917; U. S. H. & A. Co. v. Veitch, 161 Ala. 630, 50 South. 95; Wellman v. Jones, 124 Ala. 580, 589, 27 South. 416; Williams v. McKissack, 125 Ala. 544, 547, 27 South. 922; M., J. & K. C. R. R. Co. v. Bay Shore Lumber Co., 158 Ala. 622, 626, 48 South. 377; Corona Coal & Iron Co. v. Bryan, 171 Ala. 86, 54 South. 522, Ann. Cas. 1913A, 878; B. R., L. & P. Co. v. Lide, 177 Ala. 400, 404, 58 South. 990; 1 Greenl. on Ev. § 60; Andrews, Stephen on Pl. p. 333. The announcement in Berthold & Jennings Lumber Co. v. Geo. W. Phalin Lbr. Co., 196 Ala. 362, 71 South. 989,

is not to the contrary. There the ruling was of the exercise of a discretion in granting or refusing a continuance because of surprise for a slight variance in the proof from the bill of particulars furnished on demand under the statute. No question is here presented of a declaration as to the time under a videlicet, as was the question in Pollack v. Gunter & Gunter, 162 Ala. 317, 50 South. 155.

Was the defendant entitled to the general affirmative charge on the facts? The alleged contract, declared upon in count 3 as amended, was of date August 6, 1917, for the purchase by defendant of plaintiff of 1,500 barrels of flour at $12 per barrel; "time of contract shipment: Aug. Sept. Delivered: Birmingham, Ala. Terms: Sight, or sight on arrival, draft with bill of lading attached. Millers' National Federation package differentials govern. Quantity, 1,500 bbls.; brand, Town Talk; pkg., cotton; price, $12.00. Buyer accepts this contract for shipment within Aug. Sept. and assumes all risk or modification due to government regulation." Provided that it should not become effective unless "signed by the seller at its Lawrenceburg or Boston office, or confirmed in writing by it at said Lawrenceburg or Boston office. No verbal condition or modifications can alter this contract."

It was further averred that such contract was duly confirmed in writing by plaintiff at its Lawrenceburg office. The proof as to such confirmation was a letter written by plaintiff to defendant, dated August 8, 1917, containing, among other matter, the statement that—

"We confirm contract with you under date of the 6th inst. * * * for August-September shipment, our option subject to any government food control regulations, 1,500 barrels of 'Town Talk' flour, in car lots, at price $12 per barrel cotton basis delivered Birmingham. Usual sight draft terms."

[3] Was this a confirmation of the original order, or did it embody different and material provisions? We are of opinion that it was a material modification thereof, to the extent that shipments were to be made in August and September at "our [seller's] option." The original contract contained no such reservation for the seller's benefit, but the right of direction of shipment for delivery at Birmingham during said month was with the buyer; that is to say, the letter did not accept or confirm the order on the terms that the "buyer accepts this contract for shipment within August and September and assumes all risk of modification due to government regulation," but that shipments were ordered during August-September were at seller's "option" and "subject to any government food control regulations." This was not an unqualified acceptance in writing of the original written order as required by its terms; it was a new offer by plaintiff to sell flour to defendant on different terms indicated. Defendant's acceptance of the contract, so extended or modified, is not shown by the evidence. To the contrary, it is shown that defendant insisted that he had no such contract of purchase with plaintiff, and was not bound thereby. The time of shipments, whether they were to be made only at the direction of the purchaser, or whether at the discretion or convenience of the seller, were important and material provisions of the contract. Home Guano Co. v. International Agri. Corp., 85 South. 713;[1] Dowling-Martin Groc. Co. v. J. C. Lysle Mill. Co., 83 South. 486;[2] Scruggs & Echols v. Riddle, 171 Ala. 350, 361, 362, 54 South. 641. When the alleged confirmatory letter was offered in evidence, due objection was made by defendant, and the variance between allegata and probata was called to the attention of the court. There was error in admitting in evidence said letter of confirmation of the original contract as required by its terms.

[4] The contract declared upon in amended count 4 is of like purport as that on which count 3 is rested, with the exception that it was only executed by plaintiff (not by defendant) and indorsed, "Attached wire confirming," before the word "buyer." The record does not show that such "confirmatory wire" was attached thereto, nor was such confirmation introduced in evidence. The evidence discloses that the alleged contract of August 8, 1917, was made through plaintiff's agent, M. F. Johnson, at Montgomery, over long-distance telephone with a flour broker, S. C. Johnston, at Birmingham, a conversation between the latter and Charles A. Jones, of defendant company, and a telegram of acceptance sent M. F. Johnson by W. G. Vail, clerk for defendant. This was evidence tending to show ratification of the original contract and the telephone conversation to which the witnesses make reference. Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 156, 69 South. 964. However, the telegram was not attached to the contract of date August 8, 1917, nor is it found in the bill of exceptions. The allegata and probata must conform, and for this reason was there a variance.

We may observe that if there was confirmation of the contract of sale of the 1,000 barrels of flour (that of August 8, 1917) by W. G. Vail's telegram and by the letter of August 10, 1917, recovery could not be had. The telegram in no wise varied the original written contract. By the express provisions of this letter, the contract was made subject "to government regulations." That the government, by Act of Congress, and food control regulations made thereunder, fixed the price of flour at Birmingham at $10.90 per barrel was not controverted at the trial,

---

[1] Post, p. 274.   [2] 203 Ala. 491.

and was testified by the witness Johnson. It did not make the case different that the witness testified he requested defendant to order out the flour, for if such request was made, plaintiff was insisting that defendant take the flour without regard to the quantity on hand within said months, and to pay for it, not at the price fixed by government regulations ($10.90 per barrel), but at the price of $12 per barrel, as named in the contract. If the contract was confirmed by the letter as to price and quantity, it was expressly made subject to government control regulations. Plaintiff's insistence for delivery and payment was contrary to the express reservations contained in that contract, for it is further shown by the evidence that during the period in question defendant endeavored to induce plaintiff to deliver him flour at the rate fixed by the government rather than that indicated in the contract. This plaintiff refused to do.

[5] On this theory of the case, the affirmative charge requested by defendant in writing was properly given. As to this, plaintiff insists that the food control regulations having application to millers, promulgated on August 24th, provided that such regulations only become effective on and after September 10, 1917, and had not the effect of abrogating contracts entered into prior to the enactment of the Food Control Act on August 10, 1917. We have stated that the alleged confirmation of said contract (if such there was) subjected the parties thereto to any government food control regulations then existing, or that might thereafter be adopted or promulgated by the department of government having jurisdiction of the same while the contract was executory.

The case of Head v. University, 86 U. S. (19 Wall.) 526, 22 L. Ed. 160, bears some analogy to this phase of the controversy. Plaintiff had been employed by the University of Missouri as professor of Mathematics and as librarian, the contract providing that the president and professors just elected should hold office for six years from July 5, 1856, "subject to law." Plaintiff was notified by the defendant university that his office had been vacated by a recent act of the Legislature (December 17, 1859), and that the university would fill the same under said act at a meeting to be held on May 15, 1860. At such meeting the governing body of the university elected other persons to the positions formerly held by plaintiff. It was insisted that the original contract for plaintiff's services at a fixed salary for a stipulated period was within the purview of the constitutional provision which prohibited the violation of contracts by the passage of a subsequent statute. Of this the Supreme Court of the United States said that—

The plaintiff "was elected a professor of mathematics in the University of Missouri, and it was resolved that he should hold his office for six years from July 5, 1856, 'subject to law.' The judge at the circuit held, and we think correctly, that this expression meant subject to whatever law the state Legislature might think fit to pass. On the 17th of December, 1859, the Legislature did pass an act, vacating the offices of all 'the professors, tutors, and teachers connected in any manner with the university,' and providing also that a new board of curators should be elected in the place of the existing board. It was by the authority of this statute that the board of curators elected a successor to the plaintiff, and placed him in the possession of the professorship. The plaintiff accepted his office subject to the laws then in existence, and subject to the passage of such subsequent laws as should seem wise to the Legislature. If it had not been intended to place the control of his office at the disposition of the Legislature, the words 'subject to law' would have been quite unnecessary in the resolution."

The act of Congress approved August 10, 1917 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛r), four days after the date of the first order, and two days after the date of the second, and on the date of the alleged acceptance of the last order, prohibited any dealer from having on hand any necessaries "in a quantity in excess of the reasonable requirements of his business for a reasonable time." The flour in question was such necessary in the hands of the purchasing merchant, and as such was subject in quantity to the reasonable requirements of defendant's business, in its sale as an article of commerce.

[6] Without deciding whether Congress had the right to adopt such law under the war powers and give it retroactive effect in its application to existing contracts, if the President and food administrator interpreted the act as not intended to impair the obligation of existing contracts, but only to apply to contracts thereafter entered into, this did not change the express provision of the contract, by act of the parties made subject to and controlled by such subsequent acts and regulations promulgated pursuant to the act of Congress, subject to government regulations. The only purpose of the incorporation of such provision in the contract was to give it a prospective operation, the contract of necessity being subject to such regulations as existed at the time it was entered into. The letter in question, if in confirmation of the contract, was the agreement of the parties that it should be subject to such terms and regulations thereafter fixed by the government in the control and regulation of the purchase of flour as an article of commerce. If the contract had been as plaintiff contends, being so controlled, it was made impossible of execution, for the flour, delivery of which is alleged to have been contracted for, was in excess of that permitted to the defendant under the act of Congress and orders

thereunder "for his business requirements during a reasonable time thereafter" (during the next 30 days). The first of the alleged contracts would have secured to the defendant a three-month supply of flour in excess of government regulations, it being shown that his necessities were 500 barrels per month. The other contract, being for 1,000 barrels, would have given defendant a two-month supply. It was uncontroverted that he had a month's supply in store. Being impossible of performance in compliance with such regulations, the parties, if theretofore bound, were discharged from the obligations of such contract.

[7] Plaintiff insists there was no evidence showing the act of Congress and applicable orders thereunder by the food administrator. The court takes judicial knowledge of the rules and regulations promulgated under the authority of the act of Congress of August 10, 1917. Caha v. United States, 152 U. S. 211, 222, 14 Sup. Ct. 513, 38 L. Ed. 415; Jenkins v. Collard, 145 U. S. 546, 12 Sup. Ct. 868, 36 L. Ed. 812; Knight v. U. S. Land Ass'n, 142 U. S. 161, 169, 12 Sup. Ct. 258, 35 L. Ed. 974; Jones v. United States, 137 U. S. 202, 11 Sup. Ct. 80, 34 L. Ed. 691; Armstrong v. United States, 13 Wall. (80 U. S.) 154, 156, 20 L. Ed. 614; United States v. Teschmaker, 63 U. S. (22 How.) 392, 16 L. Ed. 353; Wilkins v. United States, 96 Fed. 837, 37 C. C. A. 588. Not only do the courts take judicial knowledge of the acts of Congress, but, as stated in the opinion of Caha v. United States, supra, of the rules and regulations of the administrative department of government for the transaction of business by which the public generally is controlled while this country was at war. See, also, Jeffries v. State, 39 Ala. 655; Dooley v. Penn. R. R. Co. (D. C.) 250 Fed. 142; Muir v. L. & N. R. R. Co. (D. C.) 247 Fed. 888; Marshall v. Bush, 102 Neb. 279, 167 N. W. 59, L. R. A. 1918E, 385; Vaughn v. State (App.) 81 South. 417–419.

The announcement contained in Mauldin v. Cent. of Ga. R. R. Co., 181 Ala. 591, 61 South. 947, to the effect that the courts had no judicial knowledge as to whether plans and specifications for a bridge across a navigable stream were submitted to, and approved by, the Chief of Engineers and Secretary of War, as required by the federal authorities, is not in conflict with the foregoing authorities. So the announcement in Robinson v. B. O. R. Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288, that the provision of the statute making decisions of the Interstate Commerce Commission as published in the official reports competent evidence does not relieve a party relying on a decision from putting it in evidence, is distinguishable from the food regulation acts and orders in question of fact while the country is at war, and not contrary to the view we have expressed.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.