(94 South. 816)

## MORRIS ADLER & CO. v. J. E. JONES & CO. . (6 Div. 671.)

(Supreme Court of Alabama. Nov. 30, 1922.)

**1. Sales ⬅48—Contract for sale of sugar without obtaining license void under Lever Act.**

A contract for sale of sugar by one who had not obtained a license as required by presidential proclamation of October 8, 1917, was void under the Lever Act (U. S. Comp. St. 1918, U. S. Comp. St. Supp. 1919, § 3115⅛e et seq.), though the violation of the regulation was not willful.

**2. Contracts ⬅105 — Intent that prohibited act rendered contract void subject of judicial construction.**

In determining whether a contract founded on an act prohibited under penalty by statutes is void, the intent of the law must be looked to, and, in the absence of a statutory declaration in terms that such contracts are void, the legislative intent must be the subject of judicial construction.

**3. Sales ⬅48—Contract did not become enforceable after repeal of regulation making it void.**

Where a contract for sale of sugar was void under the Lever Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115⅛e et seq.), because the seller did not obtain a license as required by presidential proclamation of October 8, 1917, it did not become valid and enforceable because the presidential regulation was repealed and abrogated before the time came for defendant's performance.

**4. Evidence ⬅47—Judicial notice taken of rules and regulations promulgated under Food Control Act.**

Courts take judicial notice of rules and regulations promulgated by authority of the Lever Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115⅛e et seq.), but such notice is not taken of an abandonment of a requirement under such act without formal repeal by competent authority.

**5. War ⬅4—President held authorized to regulate sales under Food Control Act.**

Act Dec. 31, 1919, "to provide for the national welfare by continuing the United States Sugar Equalization Board until December 31,

1920," which continued in full force and effect sections 5 and 10 of Lever Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115⅛g, 3115⅛ii) continued the general right in the President to make regulations which had been conferred by section 1 of the first act.

### 6. Pleading ⊸8(10)—Allegation of surrender of rights held one of ultimate fact.

Allegation in a plea that the parties "by mutual agreement did surrender their respective rights under such contract" was an allegation of an ultimate fact, and was permissible.

Appeal from Circuit Court, Jefferson County; J. Q. Smith, Judge.

Action by Morris Adler & Co. against J. E. Jones & Co., for breach of a contract. From adverse rulings on pleading, plaintiff suffered nonsuit, and appeals. Reversed and remanded.

The contract upon which the suit is based reads:

"To J. E. Jones & Co., Birmingham, Alabama:

"We have this day sold to you for account of ourselves:

"Quantity: 500 bags (of about 224 lbs. each) —— tons (of lbs. each) —— per cent., more or less, Java white sugars.

"Price: At (23½) twenty-three and half cents per pound.

"Shipment: Shipment to be made during August-September, 1920, at option of the sellers, from Java by steamer or steamers to Baltimore, Md. Names of such steamer or steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of responsibility under this contract. In case of damage to the sugars on steamer in transit to Baltimore, preventing seller from making full delivery, sellers will deliver under this contract to each of the purchasers of the sugars aboard said steamer a proportionate part of the sound packages.

"Payment: Payment to be made by net cash on presentation of sight draft, with invoice and bill of lading attached, in Birmingham, Alabama. Buyers to open * * * confirmed irrevocable letter of credit in favor of Morris Adler & Co., for the full invoice value of 500 bags with —— and bankers to confirm same to Morris Adler & Co.

"Should any unforeseen circumstance, such as embargoes, government supervision, accidents, fires, strikes, car shortages, riots, stress of weather, etc., prevent shipment within the time specified above, the buyer has the option of canceling such portion of this contract affected by such delay or taking the sugar so affected for later shipment, without claiming damages, and buyer's decision is to be given immediately on advice from sellers that delay has occurred. In the event of such cancellation by the buyer, the sellers shall be under no obligation to the buyer under this contract. Morris Adler & Co.

"Accepted: J. E. Jones & Co., "By J. E. Jones."

Plea 16 reads:

"Defendants, further answering the complaint, and each count thereof, separately and severally, say that this suit is based upon and founded upon a' contract made between the plaintiff, and the defendant on, to wit, the 25th day of May, 1920, which said contract is set out in words and figures on page 2 of the original complaint in this case, and which said contract and page is referred to and adopted as a part of this plea. And defendants aver that, after said contract had been made between plaintiff and the defendant, and while the said contract was still executory, and before the 10th day of December, 1920, upon which date plaintiff presented to the defendant a sight draft purporting to be drawn under and by virtue of such contract, plaintiff and the defendant did, by mutual consent and mutual agreement, cancel and annul said contract as set forth on page 2, and by such mutual agreement did surrender their respective rights under such contract."

Percy, Benners & Burr, of Birmingham, for appellant.

The rule prohibiting 60-day advance contracts was repealed prior to the date of the execution of this contract. The Food Control Act was declared unconstitutional by the Supreme Court of the United States. 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045. In determining whether contracts in violation of a statute are invalid, the court is governed by the intention of the Legislature. If from the whole act it does not appear that the Legislature intended to invalidate contracts made in violation of the statute, such contracts will not be declared invalid by the court. 182 Ala. 127, 62 South. 90. When a statute imposes specific penalties for its violation, where the act is not malum in se, and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it was not the intention of the lawmakers to render such contracts illegal and unenforceable. (D. C.) 180 Fed. 519; 156 Fed. 545, 555, 86 C. C. A. 435; 12 How. 79, 13 L. Ed. 901; 96 U. S. 640, 24 L. Ed. 648; 100 U. S. 239, 25 L. Ed. 580; 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317; 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956. A contract in violation of a statute will be enforced, if the act is merely malum prohibitum, and if, after the execution of the contract, the statute prohibiting it is repealed. 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682. The Food Control Act makes criminal only willful violations of regulations. A violation of a regulation which is not willful will not justify the revocation of a license issued under the act. (D. C.) 264 Fed. 243.

Black & Harris, of Birmingham, for appellee.

A contract founded on an act prohibited by statute is void. 5 Ala. 467, 39 Am. Dec.

336; 9 Ala. 198; 28 Ala. 514; 54 Ala. 150, 25 Am. Rep. 671; 80 Ala. 412; 93 Ala. 503, 9 South. 596; 95 Ala. 521, 12 South. 579, 20 L. R. A. 58, 36 Am. St. Rep. 245; 87 Ala. 431, 6 South. 304, 13 Am. St. Rep. 55. An act of Congress designed for the public welfare is not a revenue measure, and where it is designed for the purpose of preserving the public welfare, and not to collect revenue, a violation of the act makes contracts made in pursuance thereof, null and void. 7 Ala. App. 358, 62 South. 254; 9 Ala. App. 123, 62 South. 542; 177 Ala. 313, 58 South. 193; 197 Ala. 136, 72 South. 410; Williston on Contracts, §§ 1663, 1765. An executory contract can be canceled without any new consideration. 185 Ala. 236, 64 South. 51. The rule against contracts for delivery of sugar more than 60 days thereafter had been repealed at the time the contract between plaintiff and defendant was made.

SAYRE, J. May 25, 1920, plaintiff (appellant) entered into a contract with defendant whereby plaintiff undertook to sell, and defendant to buy, 500 bags of sugar to be shipped from Java in August or September following. The sugar arrived in America in December, 1920, and was tendered in performance of the contract; but defendant refused to accept or pay for the sugar, whereupon this action was brought to recover damages as for a breach of contract. Defendant filed special pleas 3 to 18. Pleas 11, 17, and 18 afterwards were withdrawn. Demurrer to plea 15 was sustained and overruled as to each of the other pleas. Plaintiff then suffered a nonsuit with a bill of exceptions reserving the ruling in favor of the several pleas for review in this court.

A majority of the special pleas proceeded upon the theory that the contract was void because made in violation of a rule of the United States Food Administration, made under authority of the act of Congress approved August 10, 1917 (40 Stat. 276; U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115⅛e et seq.), prohibiting the sale, among other commodities, of sugar for shipment or delivery more than 60 days after the making of such contract; but now it is conceded that this regulation had been repealed before the parties entered into the contract here at issue, and that the trial court erred in overruling plaintiff's demurrers to these pleas. This leaves for consideration the rulings on pleas 3, 4, 5, 6, and 16.

The gist of pleas 3, 4, and 5 is that the contract alleged in the complaint was void and of none effect because made in violation of section 5 of the Lever Act (40 Stat. 276, supra), reading as follows:

That, "from time to time, whenever the President shall find it essential to license the importation, manufacture, storage, mining, or distribution of any necessaries, in order to carry into effect any of the purposes of this act, and shall publicly so announce, no person shall, after a date fixed in the announcement, engage in or carry on any such business specified in the announcement of importation, manufacture, storage, mining, or distribution of any necessaries as set forth in such announcement, unless he shall secure and hold a license issued pursuant to this section. The President is authorized to issue such licenses and to prescribe regulations for the issuance of licenses and requirements for systems of accounts and auditing of accounts to be kept by licensees, submission of reports by them, with or without oath or affirmation, and the entry and inspection by the President's duly authorized agents of the places of business of licensees. Whenever the President shall find that any storage charge, commission, profit, or practice of any licensee is unjust, or unreasonable, or discriminatory and unfair, or wasteful, and shall order such licensee, within a reasonable time fixed in the order, to discontinue the same, unless such order, which shall recite the facts found, is revoked or suspended, such licensee shall, within the time prescribed in the order, discontinue such unjust, unreasonable, discriminatory and unfair storage charge, commission, profit, or practice. The President may, in lieu of any such unjust, unreasonable, discriminatory, and unfair storage charge, commission, profit, or practice, find what is a just, reasonable, nondiscriminatory and fair storage charge, commission, profit, or practice, and in any proceeding brought in any court such order of the President shall be prima facie evidence. Any person who, without a license issued pursuant to this section, or whose license shall have been revoked, knowingly engages in or carries on any business for which a license is required under this section, or willfully fails or refuses to discontinue any unjust, unreasonable, discriminatory and unfair storage charge, commission, profit, or practice, in accordance with the requirement of an order issued under this section, or any regulation prescribed under this section, shall, upon conviction thereof, be punished by a fine not exceeding $5,000, or by imprisonment for not more than two years, or both." U. S. Comp. St. 1918, U. S. Comp. St. 1919, § 3115⅛g.

Section 24 of the Lever Act provided:

That "the provisions of this act shall cease to be in effect when the existing state of war between the United States and Germany shall have terminated, and the fact and date of such termination shall be ascertained and proclaimed by the President; but the termination of this act shall not affect any act done, or any right or obligation accruing or accrued, or any suit or proceeding had or commenced in any civil case before the said termination pursuant to this act; but all rights and liabilities under this act arising before its termination shall continue and may be enforced in the same manner as if the act had not terminated. Any offense committed and all penalties, forfeitures, or liabilities incurred prior to such termination may be prosecuted or punished in the same manner and with the same effect as if this act had not been terminated." U. S.

Comp. St. 1918, U. S. Comp. St. Supp. 1919, § 3115⅛pp.

But by the act "to provide for the national welfare by continuing the United States Sugar Equalization Board until December 31, 1920, and for other purposes" (41 Stat. 386) it was provided:

"That the President is authorized to continue during the year ending December 31, 1920, the United States Sugar Equalization Board (Incorporated), a corporation organized under the laws of the state of Delaware, and to vote or use the stock in such corporation held by him for the benefit of the United States, or otherwise exercise his control over the corporation and its directors, in such a manner as to authorize and require them to adopt and carry out until December 31, 1920, plans and methods of securing, if found necessary for the public good, an adequate supply and an equitable distribution of sugar at a fair and reasonable price to the people of the United States. Sections 5 and 10 of the act entitled 'An act to further provide for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel,' approved August 10, 1917, as far as the same relates to raw or refined sugar, syrups, or molasses, are hereby continued in full force and effect until December 31, 1920, notwithstanding the provisions of section 24 of said act."

It will be observed that the last-quoted act continued sections 5 and 10 of the Lever Act in full force and effect until December 31, 1920.

By presidential proclamation, October 8, 1917, all persons, firms, corporations, and associations engaged in the business of importing, manufacturing, or distributing sugar, among other commodities, were required to secure licenses.

The question then is whether section 5, supra, suffices to invalidate the contract alleged in this cause. The complaint shows that plaintiff engaged in the business of importing sugar—probably also the business of distributing within the meaning of the act. The pleas are that plaintiff had no license. Against this rather obvious combination of facts it is urged: (1) That plaintiff is not alleged to have committed a willful violation of the act (citing Kuenster v. Meredith [D. C.] 264 Fed. 243); (2) that the statute does not intend to work a forfeiture of contracts in the circumstances here shown; (3) that the requirement of a license had been abrogated prior to defendant's failure or refusal to execute the contract according to his undertaking.

[1] 1. The statute is obscure in places. It denounces any person who knowingly engages in or carries on any business for which a license is required. Kuenster v. Meredith presented a very different question. The real issue there was whether Kuenster, who had at one time violated a regulation of the Food Administration, should thereafter be denied the right to engage in business. The court, denying the propriety of a revocation on the ground that the licensee had not willfully violated the regulation, referred for authority to the language of section 5 of the Food Control Act, describing the dereliction charged against Kuenster and denouncing its penalty as follows:

"Any person who * * * willfully fails or refuses to discontinue any unjust, unreasonable, discriminatory and unfair * * * proit or practice * * * shall be punished," etc.

The defense here is based upon a different provision of the act, which has been quoted. There was then no reason why the pleas in question should charge plaintiff with a willful violation of the regulation requiring a license.

[2] 2. The argument at this point is based upon decisions of the federal courts, a number being cited. The decisions of this court are to the general effect that a contract founded on an act prohibited under penalty by statute is void. Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538. But the intent of the law must be looked to, and, in the absence of a statutory declaration in terms that such contracts are void, the legislative intent must be the subject of judicial construction. Meridian Life Ins. Co. v. Dean, 182 Ala. 127, 62 South. 90. Here is an act "to provide for the national safety." Its violation is penalized by a fine not to exceed $5,000, or by imprisonment for as much as two years, or both. There hardly seems to be room to doubt that the rule of our decisions should be applied. O'Donnell v. Sweeney, 5 Ala. 467, 39 Am. Dec. 336; Woods v. Armstrong, 54 Ala. 150, 25 Am. Rep. 671; Harrison v. Jones, 80 Ala. 412; Moog v. Hannan, 93 Ala. 503, 9 South. 596— are some of many cases that might be cited.

We do not understand the rule of the federal courts to differ from the rule of this jurisdiction. The cases cited by appellant are to be explained on some such theory as this: The courts, while refusing to maintain an action upon an unlawful contract, strive to do justice between the parties—as, for example, in Brooklyn Life Ins. Co. v. Bledsoe, supra—by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back or compensation to be made for it. "To maintain such an action is not to affirm, but to disaffirm, the unlawful contract." Central Transportation Co. v. Pullman Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55. The same idea is expressed in Earling v. Emigh, 218 U. S. 27, 30 Sup. Ct. 672, 54 L. Ed. 915, in this language:

"Although restitution of property obtained under a contract which was illegal * * * cannot be adjudged by force of the illegal contract, yet, as the obligation to do justice rests

upon all persons, natural and artificial, if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation."

Appellant lays store by the discussion and citation of authorities found in the case of Re T. H. Bunch Co. (D. C.) 180 Fed. 519. We quote the first headnote as showing the agreement between that case and the other fairly representative cases to which we have referred:

"If plaintiff does not require the aid of an illegal transaction to establish his claim, he may recover if defendant has possession of a thing of value belonging to plaintiff, though an illegal transaction was involved therein."

In the same case the question at issue was summed up by the following quotation from Pangborn v. Westlake, 36 Iowa, 546:

"We are, therefore, brought to the true test, which is, that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold, and construe the statute accordingly."

That is our rule precisely, and in the case before us plaintiff must needs prove a contract in the teeth of the enactment to provide for the national security and defense. Our judgment is that the policy of the law will not allow him to do so.

[3] 3. The rule violated had been abrogated before the time came for the defendant's performance of his undertaking according to the illegal contract; but the contract was void at the time the parties entered into it. The repeal of the law, i. e., the regulation requiring a license, breathed no life into a contract null and void in its inception. Some voidable contracts may be saved by the repeal of laws inflicting upon parties loss or forfeiture. Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682, cited by appellant. In that case the contract in question was adjudged to be voidable only, notwithstanding the statute used the term "void," and the principle involved seems to be that adverted to in our consideration of the cases cited by appellant to the proposition that the statute in this case did not intend to work a forfeiture. Moreover, the provisions of section 24 of the Food Control Act, quoted above, would seem to answer the objection taken to these pleas.

[4] It is suggested that the Food Administration, or its successor in the administration of the Food Control Act, had in practice abandoned the requirement of a license at the time of this so-called contract, though there had been no formal repeal by competent authority. We take judicial notice, it seems, of the rules and regulations promulgated by authority of the act of Congress of August 10, 1917 (Lawrenceburg Roller Mills Co. v. Jones & Co., 204 Ala. 59, 85 South. 719); but we apprehend it would involve too deep an incursion into a doubtful field for us to assume knowledge of a repeal alleged to have been effected in so uncertain a manner. We leave the merit of this suggestion to be determined when the underlying facts shall be brought forward by appropriate pleading. We hold pleas 3, 4, and 5 good as for any objection taken against them.

[5] Plea 6 is based upon an alleged violation of the following rule of the Food Administration:

"Rule 7. *Speculation Prohibited.*—No broker or other licensee shall buy or sell any food commodity for his own account unless he is also regularly engaged in and holds himself out to the trade as conducting the business of distributing such commodity otherwise than on a commission or brokerage basis, or unless he uses such commodities in manufacturing; provided that this rule shall not apply to sales on an exchange, board of trade, or similar institution."

We have quoted the relevant statutes. As we understand the objection taken to this plea it is that the rule was adopted after the termination of the war between the United States and Germany, and therefore at a time when the President had no authority to issue licenses and prescribe regulations for their issuance; in other words, the act of December 31, 1919, "to provide for the national welfare by continuing the United States Sugar Equalization Board until December 31, 1920," which continued in full force and effect sections 5 and 10 of the act of August 10, 1917, did not continue the general right in the President to make regulations which had been conferred by section 1 of the first act, and the prescription of section 5 does not cover the regulation on which the plea is based. We think the contention involves too narrow an interpretation of section 5. We think the regulation in question is fairly justified by the language of the section. "The President is authorized to issue such licenses and to prescribe regulations for the issuance of licenses;" in other words, the regulation against speculation, a regulation affecting the scope and operation of licenses to be issued, is a regulation for the issuance of licenses. The demurrer was properly overruled.

[6] Plea 16 requires no extended treatment. It is objected to as being the mere statement of a conclusion in so far as it alleges that the parties "by mutual agreement did surrender their respective rights under such contract." We think this was

the allegation of the ultimate fact on which the defense rested and was permissible.

For the errors indicated the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.