348 So.2d 269 (1977)
In re Dorothy Gray ELMORE
v.
STATE of Alabama.
Ex parte State of Alabama ex rel. Attorney General.
SC 2096.
Supreme Court of Alabama.
May 20, 1977.
William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State, petitioner.
No brief for respondent.
PER CURIAM.
Dorothy Gray Elmore was indicted, tried, and found guilty by a jury of driving while intoxicated. She appealed to the Court of Criminal Appeals which reversed the judgment of conviction. Elmore v. State, (decided March 30, 1976), Ala.Cr.App., 348 So.2d 265. We granted certiorari, and reversed and remanded, on a point unrelated to the one now presented. Elmore v. State (decided July 9, 1976), Ala., 348 So.2d 264.
On remandment, the Court of Criminal Appeals again reversed the judgment of conviction, on the following two grounds:
I. The motion to exclude the State's evidence should have been granted because the evidence was clear and unequivocal that no police officer saw petitioner operating an automobile while intoxicated upon a public highway.
II. The failure of the prosecution to lay a proper predicate for the admission into evidence of the results of the chemical test for intoxication.

I
The first issue presented is whether the evidence supports the inference that Elmore was driving on a public highway while intoxicated.
In its opinion, the Court of Criminal Appeals recounted the State's evidence, as follows:
"The evidence for the State shows that on November 15, 1974, John W. McCormick, *270 Jr., Deputy Sheriff of Mobile County, along with his partner Deputy McAfee, were on routine patrol on the Old Pascagoula Road in Mobile County. He testified that they approached the intersection of McDonald Road and Old Pascagoula. They turned south on McDonald Road at which time a car swerved over into their lane of traffic and forced them partially off the road.
"He described the automobile as an old white Oldsmobile and he fixed the time at approximately 5:20 to 5:30 p. m. He further stated that they turned around and the traffic was pretty heavy at that time and it took them a few minutes to get turned around. They headed back down toward Pascagoula to try to find the car that ran them off the road. He stated that they came upon the automobile approximately a mile and a half from the point where they first saw it. He said that the car was stopped with the nose down into a ditch at Old Pascagoula and Al Johns Road, that appellant was seated behind the steering wheel and there was a boy in the car with her.
"He further testified that he observed appellant at that time and she seemed disoriented and her speech was slurred and he smelled a strong odor of alcohol in the automobile. He noticed that there was some beer in the car but it was not open. He expressed his opinion that she was intoxicated.
"On cross-examination he testified that he could not identify appellant as being the driver of that car that almost ran them off the highway. He stated that he did not see appellant driving a car on a public highway. He further stated that the stopped car in which appellant was sitting under under the steering wheel was white over a dark blue Oldsmobile and that he could only identify the car by its color. He further testified that he could not state that he had seen appellant driving this automobile in Mobile County on that date or any other date."
As stated previously, the Court of Criminal Appeals held that since no officer saw petitioner operating an automobile upon a public highway on the date she was arrested, the petitioner's motion to exclude should have been granted. The actual holding of the Court of Criminal Appeals is as follows:
"The evidence is clear and unequivocal that no officer saw appellant operating an automobile upon a public highway in Mobile County on the date that she was arrested and therefore, the motion to exclude should have been granted." (Emphasis added.)
Cf. Davis v. State, 27 Ala.App. 551, 176 So. 379 (1937), wherein the Court of Appeals stated:
"It is true that no witness testified to seeing the defendant take a drink of whisky or any narcotic drugs, but there is testimony for the State tending to prove that at the time of the accident, which fixed the time of the prosecution, the defendant was under the influence of whisky; and the inferences to be drawn from that fact are: He was driving the automobile while in that condition.. . ." (Emphasis supplied.) 27 Ala. App. at 553, 176 So. at 381.
Likewise, in Ayers v. State, 48 Ala.App. 743, 267 So.2d 533 (1972), the defendant was convicted of manslaughter in the second degree as a result of an automobile collision. In outlining the evidence which tended to prove defendant's guilt, the Court of Criminal Appeals held that there was evidence appearing in the record from which the jury could reasonably infer that defendant was doing an unlawful act, i.e., driving under the influence of intoxicating liquors. The appellate court made this inference in spite of the fact that the State had no witness who testified to seeing the defendant driving. In addition, the officer testified that he arrived at the scene of the collision some fifteen minutes after the fatal accident. Admittedly, in Ayers, the defendant was "effectively trapped" in his automobile, whereas, in this case, petitioner was not trapped but was seated behind the steering wheel, but this is a distinction without a difference. Notwithstanding this factual distinction between this case and *271 Ayers, we are of the opinion that the inferences drawn from Ayers are analogous to the case at bar.
Furthermore, we do not consider it likely that the defendant here could have had access to any significant amount of alcohol during this extremely brief period before Deputies McCormick and McAfee arrived. Montgomery v. State, 44 Ala.App. 129, 203 So.2d 695 (1967). Gamble v. State, 36 Ala. App. 581, 60 So.2d 696 (1952), is not factually controlling in this instance. Thus, we hold the Court of Criminal Appeals erred in its resolution of issue I.

II
As to the second issue, we consider the Court of Criminal Appeals ruled correctly and properly applied the rule announced in Patton v. City of Decatur, Ala., 337 So.2d 321.
The judgment of the Court of Criminal Appeals is therefore affirmed in part, reversed in part, and remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C. J., and BLOODWORTH, FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.
MADDOX and BEATTY, JJ., dissent.
MADDOX, Justice (dissenting).
I concur in Part I of the opinion, except I do not think that Gamble v. State, 36 Ala. App. 581, 60 So.2d 696 (1952), cited by the Court of Criminal Appeals, and also referred to and distinguished by the majority of this Court in Part I, is sound law. I believe that Ayers v. State, 48 Ala.App. 743, 267 So.2d 533 (1972), also cited by the majority, states the better rule, that is, that a driver's drunken condition after an automobile accident can be a fact from which the jury would infer that he was driving the automobile while in that condition.
As to Part II of the majority opinion, I respectfully dissent. The majority holds that before a chemical test for intoxication can be admitted into evidence, the state must introduce into evidence a duly certified and authenticated copy of the Rules and Regulations promulgated by the State Board of Health. The majority states that the Court of Criminal Appeals ruled correctly and properly applied the rule announced in Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976). As I understand Patton, it holds that in a prosecution for driving while intoxicated, the trial court erred in admitting into evidence the result of a photoelectric intoximeter test where it was not shown that the duly adopted methods or regulations of the State Board of Health were followed in administering the test.
In Patton, this Court said:
"Nowhere is it shown that duly adopted methods or regulations of the State Board of Health were followed in administering the test. The trial court therefore had before it no certified methods promulgated by the Board of Health for the administration of the test and consequently was unable to ascertain standards against which the evidence could be measured.
* * * * * *
"Our decision in the instant case does not stand for a proposition that every legislative delegation of power gives rise to a mandatory duty to promulgate administrative standards in order for that power to be validly exercised. But our inability here to ascertain the validity of the results obtained from a technologically sophisticated device due to questionable operator technique, demonstrates the absolute necessity for written procedural methods governing its use. In this regard, unwritten standards of the Board of Health are no better than no standards at all. See Sun Ray Drive-In Dairy, Inc. v. Oregon Liquor Control Comm., 16 Or. App. 63, 517 P.2d 289 (1973). The need for written standards becomes particularly acute where, as here, a finding of criminal conduct may well turn upon adherence to and rigid compliance with such standards.

*272 "Our decision, moreover, is not to be construed as a rejection of results of the photoelectric Intoximeter when introduced as evidence against persons charged with driving while under the influence of intoxicating liquor. Although intoxication levels obtained from the P.E.I. and similar blood alcohol content measuring devices have been fraught with evidentiary challenges as to their probative value in criminal proceedings; see State v. Bessette, 130 Vt. 438, 296 A.2d 179 (1972); we have been willing to accept these results and statutory presumptions which attach therefrom where the record is devoid of matters which substantially draw into doubt their accuracy. Rivers v. Black, 259 Ala. 528, 68 So.2d 2 (1953); Bonner v. State, 52 Ala. App. 346, 292 So.2d 460 (1974). Furthermore, the legislature has declared that the results of P.E.I. tests `shall be admissible as evidence.' Tit. 36, § 155(a), supra. Accordingly, in passing on a conviction which was based in part on the results of a P.E.I. test, the only concern of this court is to ascertain whether the will of the legislature has been obeyed. We hold that an affirmative response to that inquiry cannot follow where there are no written standards governing the manner in which P.E.I. tests are to be performed by state law enforcement agencies." [Emphasis supplied.]
A reading of Patton shows that this Court was under the impression that there were no written regulations of the Board of Health on this subject. I was under this erroneous impression. It is apparent that this Court based the Patton decision on the proposition that the Board's rules on the P.E.I. tests were unwritten practices, rather than written and formally promulgated rules and regulations. I have examined the briefs of both parties in Patton. No rules of the Board were called to the attention of this Court. Indeed, this point was hardly touched by either side. If there were no written standards, this Court's decision in Patton and the Court of Criminal Appeals' decision in the instant case would be unquestionably correct, but that is not the case. On March 18, 1970, five (5) months after the Alabama Chemical Test for Intoxication Act became law, the State Board of Health formally approved and promulgated detailed rules and regulations controlling the administering of chemical tests for intoxication. These regulations were amended and reissued on October 23, 1974, and February 18, 1976.
The Rules and Regulations of the State Board of Health have the force and effect of law. Title 22, Section 7(6), Code of Alabama, 1940 (Recomp. 1958), provides:
"The state board of health shall have authority and jurisdiction . . .
* * * * * *
"(6) To adopt and promulgate rules and regulations providing proper methods and details for administering the health and quarantine laws of the state, which rules and regulations shall have the force and effect of law and shall be executed and enforced by the same courts, bodies, officials, agents, and employees as in the case of health laws, and a quorum, as provided for by the constitution of the medical association of the state of Alabama shall be competent to act. . . ." [Emphasis supplied.]
It is well settled that courts in Alabama take judicial notice of administrative rules and regulations when the rules and regulations are declared by statute to have the force and effect of law. Hardin v. State, 241 Ala. 4, 3 So.2d 89 (1941), (judicial notice taken of the rules and regulations promulgated under statutory authority by the Alabama Beverage Control Board); State v. Friedkin, 244 Ala. 494, 14 So.2d 363 (1943) (the Alabama Board of Medical Examiners, e. g. the State Board of Healththe same agency involved here); West v. State, 242 Ala. 369, 6 So.2d 436 (1942) (the Alabama State Department of Conservation); Department of Industrial Relations v. Headon, 42 Ala.App. 132, 155 So.2d 123 (1962) (judicial notice taken of the regulations of the Director of the Department of Industrial Relations); Lovett v. State, 30 Ala.App. 334, 6 So.2d 437 (1942), cert. denied, 242 *273 Ala. 356, 6 So.2d 441 (judicial notice of rules and regulations of Alcoholic Beverage Control Board); McElroy, The Law of Evidence in Alabama, Vol. 3, §§ 480.01-484.02 (2d Ed.); 29 Am.Jur.2d § 42, pp. 76-77.
It is well established that Alabama courts take judicial notice of the rules and regulations promulgated by federal administrative bodies under the authority of an Act of Congress. Lawrenceburg Roller Mills Co. v. Charles A. Jones & Co., 204 Ala. 59, 85 So. 719 (1920); Morris Adler & Co. v. J. E. Jones & Co., 208 Ala. 481, 94 So. 816 (1922).
Likewise, a federal court can take judicial knowledge of those matters accorded judicial notice by a state court. Milwaukee Mechanics Ins. Co. v. Oliver, 139 F.2d 405 (5 Cir. 1943), (the federal court took judicial notice of a state administrative regulation.) See Weinstein's Evidence, Vol. 1, § 200(02).
Furthermore, Title 15, Section 243, Code, provides:
"Presumptions of law and matters of which judicial notice is taken need not be stated." (Emphasis supplied.)
In the past, this Court has not required the pleading of ordinances of which judicial notice could be taken. See Smiley v. City of Birmingham, 255 Ala. 604, 52 So.2d 710 (1951).
In my opinion, the Rules and Regulations of the State Board of Health were before the trial court as a matter of law when it ruled on the admissibility of the P.E.I. test results.
BEATTY, J., concurs.