Henry Joseph Nagem, Jr. was convicted in the circuit court of Russell County of driving while intoxicated, on appeal of his conviction for the same offense in the municipal court of Phenix City. Sentence was a $750 fine and six months' hard labor which was suspended upon his attending DUI school.
At approximately 6:00 on the morning of Saturday, April 6, 1985, Nagem drove his Ford Thunderbird automobile out of the parking lot of the Holiday Inn on the 280 Bypass in Phenix City and collided into the motorcycle driven by William Drummond. Nagem's car was damaged "on the front part" and the motorcycle was damaged on the side.
Drummond, who sustained a broken leg, testified that Nagem got out of his car, walked to where he was on the side of the road, and said, "I am sorry. I hit you." As Nagem was "standing there telling" Drummond "how sorry he was," Drummond told him to call an ambulance. Nagem began to run across the street to the Holiday Inn parking lot but then stopped and started walking. Drummond "yelled" at Nagem to "run," and testified that Nagem's "eyes looked glassy and I thought he might be in a daze or something but when he couldn't run across the road I definitely knew something was wrong with him." Drummond stated that Nagem "couldn't run," and that "[i]t was just like he didn't have the energy to run" * * * [H]e was almost staggering." Drummond testified that Nagem "stayed gone" about ten minutes after leaving the scene.
The ambulance arrived about ten minutes after Nagem left. Drummond did not see Nagem drinking and did not notice any "unusual odors around or about" him.
Phenix City Police Officer Thomas Wilgis received a dispatch at 6:10 that morning and arrived at the scene of the accident "just a few minutes later." When he arrived, Nagem was "stepping out" of the driver's side of his car. Officer Wilgis did not know where Nagem had been between the time of the accident and the time he arrived. He observed "another subject that was passed out in the backseat" of Nagem's car and smelled "an odor of some type of alcoholic beverage inside the car," but did not know if the odor was there before or after the wreck. He stated that the Holiday Inn lounge usually closes at 5:00 A.M., approximately one hour before the accident.
Phenix City Police Officer Dennis Harrell arrived at the scene at "about maybe 6:05 — a little after 6 o'clock." Officer Wilgis *Page 1381 
was already there. He talked to Drummond just a minute because "they were getting ready to transport him to the hospital." Then he walked over to Nagem. Officer Harrell testified:
 "I detected an odor of alcoholic beverage about his person when I was talking to him. He was a little bit staggering on his feet — unsteady. He appeared to be up all night and I asked him for a driver's license and he stated he did not have one."
. . . .
 "I asked him where he had been prior to the accident and he stated he had come out of the Holiday Inn and he was waiting in his car trying to sober up before he left, so he would not be stopped. I asked him how long he had been there and he said maybe an hour or an hour and 30 minutes."
. . . .
 "He stated that after sitting there a while he decided to leave and then he pulled out on the highway and didn't see anything coming and pulled out and that's when the accident occurred."
The officer felt that Nagem "was extremely under the influence." Nagem told the officer that he made the telephone call reporting the accident.
Officer Jackie Thorn gave Nagem a breathalyzer test at 7:05 that morning. Nagem's blood-alcohol content was .15 percent.
 I
When Officer Harrell was asked about the defendant's demeanor that he observed, defense counsel stated: "Judge, I would renew my objection on the same grounds, . . . and also no predicate specifically relating to the time and also the City has not shown the lack of access to alcohol between the time of the alleged driving and the time he talked to him." This motion was overruled.
After the State rested its case, the defendant made a motion for a judgment of acquittal and again raised this issue:
 "The condition of a defendant sometime following an accident is not admissible unless the City first shows no access to alcohol between the time of the accident and the time of the officer or the witness first observed this gentleman. We feel the City has not done so. They have at most proven that the bar or the lounge of the Holiday Inn was closed. They have not proven that there was no access to alcohol in the Holiday Inn from other sources nor have they proven that there was access to alcohol from other establishments. Further, the City's own testimony shows that there was a strong odor of alcohol in the car. There has been no proof that there was access to alcohol in the car itself following the accident and based on this we feel the City has failed to make out a prima facie case and a judgment of acquittal or motion to exclude should be granted."
In his argument, defense counsel cited specific cases supporting his position. The court overruled this motion and stated, "I believe that they are using in those things substantial time or something of that nature and in my opinion over a period of 10 or 15 or 20 minutes at that particular time and place and under the circumstances that existed there, that the City has met its burden."
The defendant rested without presenting any evidence.
Intoxication may be evidenced by a person's "prior orsubsequent condition of intoxication within such a time that the condition may be supposed to be continuous." J. Wigmore, 2Evidence In Trials At Common Law § 234, at 33 (Chadbourn Rev. 1979) (emphasis in original). "Even though there is no other evidence of a person's intoxication at the time in issue, evidence is admissible that he was drinking or intoxicated shortly after the time in issue." C. Gamble, McElroy's AlabamaEvidence § 60.03 (5) (3rd ed. 1977). See also Landham v. Lloyd,223 Ala. 487, 490, 136 So. 815 (1931).
 "The question of materiality usually arises however, in connection with evidence *Page 1382 
of his condition some time after the principal event. If a considerable period of time has elapsed, defendant's condition at a later time may be held too remote unless it is first shown that he had no access to liquor in the meantime. Id. citing Gamble v. State, 36 Ala. App. 581, 60 So.2d 696 (1952); Phillips v. State, 25 Ala. App. 286, 145 So. 169 (1932)." E. Fisher and R. Reeder, Vehicle Traffic Law, p. 179 (1974).
An accurate statement of this same principle as applied by the Alabama Appellate Courts is:
 "While it is the doctrine of our cases that it is error to permit testimony to the effect that an accused was under the influence of intoxicating liquors subsequent to commission of an offense, without first showing the inaccessibility of liquor during the interim, yet a reading of the decisions pronouncing this doctrine will show that in all such a substantial period of time had elapsed between the occurrence and the time at which the accused was observed, i.e. from 20 to 30 minutes, to several hours." Moates v. State, 40 Ala. App. 234, 237, 115 So.2d 277, cert. denied, 269 Ala. 698, 115 So.2d 283
(1959) (emphasis added).
In the following cases, evidence of the accused's intoxicated condition was inadmissible because a "substantial" period of time had passed after the offense and it was not shown that the accused had no access to intoxicating liquors in the meantime:Montgomery v. State, 44 Ala. App. 129, 131, 203 So.2d 695 (1967) (under particular circumstances, 15-20 minutes "border line");Blevins v. State, 38 Ala. App. 584, 585, 90 So.2d 98 (1956) (twenty to thirty minutes); Gamble v. State, 36 Ala. App. 581,582, 60 So.2d 696 (1952) (25 or 30 minutes); Rainey v. State,31 Ala. App. 66, 67, 12 So.2d 106 (1943) (1 1/2 hours); Phillipsv. State, 25 Ala. App. 286, 287, 145 So. 169 (1932) ("some time"). See also Briley v. State, 21 Ala. App. 473, 109 So. 845
(1926) (the fact that the accused was drunk or drinking 24 hours after the homicide, "without evidence showing continuation back to time of the act, is not a part of the res gestae, and is inadmissible in evidence"); Goodman v. State,20 Ala. App. 392, 394, 102 So. 486 (1924) (fact that accused was intoxicated and had whiskey in car when arrested more than one hour after accident "were too remote and unconnected with the accident to be a part of the res gestae").
However, where a "substantial" period of time has not elapsed between the event and the observation of the accused, testimony of the accused's intoxicated condition is admissible. Elmore v.State, 348 So.2d 269, 271 (Ala. 1977) ("[W]e do not consider it likely that the defendant here could have had access to any significant amount of alcohol during this extremely brief period before" the deputies arrived.); Ayers v. State,48 Ala. App. 743, 746, 267 So.2d 533 (1972) (fifteen minutes where driver "effectively trapped" in car containing no alcohol);Gladden v. State, 36 Ala. App. 197, 199, 54 So.2d 607, cert. denied, 256 Ala. 368, 54 So.2d 610 (1951) (five or ten minutes was "not sufficient intervention of time from the main event to affect its admissibility"); Gills v. State, 35 Ala. App. 119,124, 45 So.2d 44, cert. denied, 253 Ala. 283, 45 So.2d 51
(1950) (where officers arrived "soon after" collision, "clearly there was not sufficient intervention of time from the main event to affect its admissibility"). Where a witness arrived at the scene within one or two minutes of the collision in which the accused was injured, the Court of Appeals held: "To infer that this appellant could have had access to liquor during this negligible period of time, and under the conditions existing, would indeed require that common sense be laid aside." Moates,40 Ala. App. at 237, 115 So.2d 277.
"Intoxication may be shown by introducing evidence of acts and circumstances which taken together are relevant to show intoxication." Kingry v. McCardle, 266 Ala. 533, 537,98 So.2d 44 (1957); Davis v. Radney, 251 Ala. 629, 631, 38 So.2d 867
(1949). Though no one individual circumstance may be sufficient to prove intoxication, *Page 1383 
the combined effect of all the circumstances should be considered. "Though no one of them by itself may be proof of it, each is a circumstance of more or less value in connection with the others. From them all and other circumstances in the case the jury could infer that he was intoxicated." SouthernNatural Gas Co. v. Davidson, 225 Ala. 171, 173, 142 So. 63
(1932).
In this case, "we do not consider it likely that the defendant could have had access to any significant amount of alcohol during" the ten-minute period he was absent from the scene following the collision. Elmore, 348 So.2d at 270. To assume that Nagem could have walked across the highway, through the parking lot of the Holiday Inn, found a telephone, notified the police, returned to his car at the scene of the wreck, and at some point during this ten-minute period, consumed enough alcohol to become "extremely under the influence" would require that "common sense be laid aside." Moates, 40 Ala. App. at 237,115 So.2d 277. The testimony was not that Nagem merely smelled of alcohol; the testimony was that he was "a little bit staggering" and "extremely under the influence." Approximately one hour after the accident, his blood-alcohol level was .15%.
"The surrounding circumstances as well as the time elapsed must be considered in passing upon the admissibility of testimony over the objection that it was too remote." Howard v.State, 155 Tex.Crim. R., 230 S.W.2d 213 (1950).
 "Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. It rests largely in the enlightened discretion of the court whether or not such proof will be allowed. Remoteness has regard also to factors and considerations other than mere lapse of time. It results, therefore, that it is practically impossible and not at all accurate to attempt to state a fixed rule or standard with particular reference to the time element. Of course it can be said with certainty that the tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main event. Notwithstanding evidence may be logically relevant, its admissibility does not follow unless it has some probative value to the inquiry of instant concern.
 "The late Justice Thomas of the Supreme Court stated the following rule in Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216, 217: `As a general rule, facts are deemed relevant which logically tend to prove or disprove the fact in issue, or which afford a reasonable inference or shed light upon the matter contested; and facts bearing so remotely upon or collaterally to the issue that they afford merely conjectural inference concerning the facts in issue should not be admitted in evidence.'" Smitherman v. State, 33 Ala. App. 316, 318-19, 33 So.2d 396 (1948).
While, under other circumstances, ten minutes may constitute a "considerable" or "substantial" period of time, under the facts of this particular case we find no abuse of discretion by the trial judge in the admission of the officer's testimony that the defendant appeared intoxicated where the officer arrived within ten minutes after the accident.
 II
"Roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute `custodial interrogation' for purposes of Miranda. Berkemer v. McCarty,468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)." Boyd v.City of Montgomery, 472 So.2d 694, 698 (Ala.Cr.App. 1985).
 "[Traffic] stops are rarely `custodial' under Miranda, since they are ordinarily temporary and brief and they occur in public view, where it is unlikely that a motorist would feel intimidated or that a police officer would seek to intimidate. While a motorist who has been detained pursuant to a traffic stop might thereafter be subjected to treatment that renders him `in custody' for Miranda
purposes, until such treatment occurs no *Page 1384 Miranda warnings are required." W. Ringel, 2 Searches Seizures; Arrests and Confessions § 26.6 (b) at p. 26-26.6 (2nd ed. 1985).
See also Annot., 31 A.L.R.3d 565, § 12 (b) (1970); Annot., 25 A.L.R.3d 1076 (1969).
"No one at an accident scene has a legal or constitutional right not to be asked what happened by an investigating officer. . . . The Miranda rule is not concerned with the routine, investigative questioning of people at the scene of a motor vehicle accident." Stalls v. Penny, 62 N.C. App. 511,302 S.E.2d 912, 914 (N.C.App. 1983); Snyder v. State,15 Ark. App. 277, 692 S.W.2d 273, 274 (1985). The comments of the court inStalls are applicable here:
 "That the officer may have suspected that petitioner had driven the car and even that he was under the influence of some intoxicant makes no difference. Any suspicion that he then had was without any evidentiary basis whatever to support it. If officers in such situations were required by the law to proceed as though their suspicions had been verified, and thus treat mere suspects as if they had been accused of violating the law, it would be destructive, rather than protective, of personal rights and the public good. Though the law must be ever alert in protecting personal rights, it must do so with some regard for the rights, activities and concerns of others and society as a whole. Accidents involving damage and injury to property or persons, and possible violations of the law, must be investigated. The investigation conducted here, voluntarily cooperated in by the petitioner, violated no right of the petitioner, constitutional or otherwise." 302 S.E.2d at 914.
Nagem's statement at the scene of the accident was properly admitted into evidence.
 III
Phenix City Police Officer Jackie Thorn was properly permitted to testify that Nagem registered .15 percent on a breathalyzer test.
 "Section 32-5A-194, Code of Alabama 1975, allows the admissibility of evidence of the amount of alcohol or controlled substance in a person's blood, urine, breath, or other bodily substance. A proper predicate must be laid for the admissibility of such evidence, however. Myrick v. Montgomery, 54 Ala. App. 5, 304 So.2d 247, cert. denied, 293 Ala. 768, 304 So.2d 248
(1974). This predicate may be established by showing, first, that the law enforcement agency has adopted the particular form of testing that was in fact used. Alabama Code 1975, § 32-5A-192 (a). See Estes v. State, 358 So.2d 1050 (Ala.Crim.App.), cert. denied, 358 So.2d 1057 (Ala. 1978). Second, there must be a showing that the test was performed according to methods approved by the State Board of Health. Alabama Code 1975, § 32-5A-194 (a)(1). See Commander v. State, 374 So.2d 910 (Ala.Crim.App. 1978). This may be proved by the introduction of the rules and regulations the officer followed while administering the test and the officer's testimony that he did, in fact, follow those rules when he administered the test in question. Parker v. State, 397 So.2d 199
(Ala.Crim.App. 1981), Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976). Third, there must be a showing that the person administering the test has a valid permit issued by the State Board of Health for that purpose. Alabama Code 1975, § 32-5A-194 (a)(1)." Ex parte Bush, 474 So.2d 168, 170 (Ala. 1985).
Officer Thorn testified (1) that the Phenix City Police Department "designated or accepted the breathalyzer machine as a machine to measure alcoholic content in the blood;" (2) that he followed the rules and regulations of the State Board of Health in testing Nagem; and (3) that he was licensed and authorized to operate the breathalyzer machine. In addition, Officer Thorn produced a valid license issued by the State Department of Health, which the trial court "observed." *Page 1385 
 IV
The prosecutor questioned Officer Thorn on direct examination about State's Exhibit 1, a printed form of the "Rules and Regulations of the State Board of Health Relating to the Alabama Chemical Test for Intoxication Act" and State's Exhibit 2, the "Breathalyzer Operational Check List." These forms were marked but not introduced into evidence. Immediately after the defense rested its case, the trial judge found Nagem guilty and imposed sentence. At that time, the following occurred:
 "MR. LOFTIN [City Attorney]: Your Honor, we had previously marked Plaintiff's Exhibit Number 1 and 2. We don't know if we officially offered them but we would at this time.
 "MR. LANDREAU [Defense Counsel]: We would object to him offering them after sentence.
 "MR. LOFTIN: We would ask the Court to reopen for the purpose of officially offering this document to perfect the record.
 "THE COURT: Well, the Court had received them, really. There was no objection to them at the time we discussed them and they went over them. The Court is going to allow them to be a part of the record in this case and I certainly would give you an objection to that.
 "MR. LANDREAU: Your Honor, for the record, our objection is to be based on the fact that they were not offered in evidence and therefore the defendant did not have an opportunity to object and did not waive an objection and further that the motion to let them come in would be after the city had rested and after sentencing and we would just voice an objection based on the fact that the city cannot reopen for those purposes.
 "THE COURT: I overrule. Let the exception be noted." (Emphasis added.)
We find no error. Nagem was tried by a judge sitting without a jury. The record indicates that, before allowing the officer to testify to the results of the breathalyzer test, the trial judge observed and considered the forms "offered" by the prosecutor in establishing the predicate for the admission of the test results. "Where real or demonstrative evidence has not been formally introduced in evidence, the fact that it has been used in connection with the giving of testimony makes it evidence in the case and proper to go before the jury in its deliberations." Jolly v. State, 405 So.2d 76, 77 (Ala.Cr.App. 1981).
 V
The Alabama Uniform Traffic Ticket and Complaint in this case was verified by "Max Wilxe, Clerk." The ticket must be verified before a magistrate. Rule 18 II (B), Alabama Rules of Judicial Administration, provides that, "(1) The municipal court magistrates agency division shall be composed of magistrates selected as follows: (a) All clerks of municipal courts. . . ." Rule 18 II (B)(2) provides, "The powers of a municipal court magistrate shall be limited to: (a) Issuance of arrest warrants; . . ." Alabama's Uniform Traffic Ticket and Complaint Manual provides: "At the time the officer transmits the tickets to the court, he should swear to the alleged charges before the court clerk." Consequently, we find that the Uniform Traffic Ticket and Complaint was properly verified.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 1386